IN MARCH, 1814.

---

JOHN R. LIVINGSTON,   *Appellant,*

   *against*

WILLIAM BYRNE,    *Respondent.*

THIS cause came before this court, on *appeal* from the court of chancery. The following facts appeared from the pleadings and depositions in the cause:

On the 1st *December*, 1803, *Edward Livingston* was seised in common, with the heirs of *E. C. Goodrich,* of 800 lots of land, in the town of *Esperanza,* now *Athens,* in the county of *Greene ;* and on the same day, executed to the defendant, in the court below, the now appellant, a deed thereof, in *trust,* to procure

*A., on the 1st December, 1803, conveyed certain lands, in trust, to the defendant, to make partition, and to sell the same, and pay a debt due from A. to the United States,&c.; and afterwards, on the 24th of the same month, A.* executed a deed, in trust, to B., C., and the defendant, to sell, and out of the proceeds, in the first place, to pay the said debt to the *United States,* &c. On the 27th of the same month, a judgment was rendered in the district court, at the suit of the *United States,* against A. ; and in 1805, execution was issued thereon, and the said lands advertised for sale by the marshal, in which advertisement was incorporated, a notice from B., C., and the defendant, that they would release to the purchaser their interest under the deed of the 24th *December,* which notice was read publicly at the sale, in the presence of the defendant, who gave no intimation of his claim under the deed of the 1st *December,* and the premises were sold to the complainant, who had no notice of the defendant's claim. B. and C. executed a release to the complainant, but the defendant refused to execute it without a proviso, saving his right under the prior deed. The chancellor decreed, that the defendant should execute an unconditional release, and pay the complainant's costs; which decree was affirmed, on appeal.

*It seems,* that had the fact of notice been brought home to the purchaser, it would not have countervailed the public notice given by the trustees; such public notice, in which the defendant joined, being a waiver of his prior claim. *It seems,* that the subsequent deed, being substantially f r the same trusts, and having been acted upon, whilst the prior one had lain dormant, was an extinguishment of the prior deed. *Quære,* how far the terms of a sale at auction may be contradicted by parol declarations. A sale at auction, under process of law, cannot be invalidated for mere inadequacy of price. Costs may be decreed against a trustee unreasonably refusing a conveyance.

*IN ERROR.*
.....
ALBANY,
March, 1814.

LIVINGSTON
*v.*
BYRNE.

partition to be made with the other tenants in common, and after partition, to sell the same, and apply the proceeds to the payment of any balance that might be found due from *Edward Livingston* to the *United States,* on a settlement of his account, and apply the overplus, if any, to *Edward Livingston,* or his heirs. On the 24th of the same month, *Edward Livingston* executed to *Samuel Osgood, David Gelston,* and the defendant, a deed of divers tracts of land, of which the lots above mentioned were a part, in trust, to sell, and apply the proceeds, 1st, to pay the balance due to the *United States ;* 2d, to pay the debts due to the other creditors of *Edward Livingston ;* and, lastly, to refund to him the overplus, if any.

On the 27th of the same month, a judgment was rendered in the district court of the *United States,* at the suit of the *United States,* against *Edward Livingston,* for 100,000 dollars debt, and 14 dollars and 89 cents damages. In *July,* 1805, the attorney of the *United States* being about to issue an execution on the said judgment, and the trustees under the last-mentioned deed being apprehensive that that deed might injure the sale of the premises, under the execution, published an advertisement in the public papers, giving notice, that they, " assignees of the estate of *Edward Livingston,* under an assignment bearing date the 24th day of *December,* 1803, would execute a release to every person who should become a purchaser of any of *Livingston's* property, at the marshal's sale, of all their right, title, and interest in the property so purchased, if it should be required to be done." On the 6th *August,* a *fi. fa.* was issued on the said judgment, to *John Swartwout,* the then marshal of the *New-York* district, who advertised the lands of *Livingston* for sale, in which advertisement was inserted the above-mentioned notice from the trustees. On the 27th *December,* 1805, the premises in question were sold at auction to one *Goodman,* an agent for the complainant, the now respondent, being the highest bidder, for eleven dollars. The appellant was present at the sale, and the above notice was, at the time of the sale, openly and publicly read by the auctioneer; and the marshal, on the same day, executed a deed to the respondent. After the sale, the respondent drew a general release of all the right of the trustees, or either of them, to the premises, containing a covenant, that they had done no act to encumber, impeach, or impair the title. This

IN ERROR.
.....
ALBANY,
March, 1814.

LIVINGSTON
v.
BYRNE.

release was executed by *Osgood* and *Gelston;* but the appellant refused to execute it. The respondent filed his bill to obtain a specific performance of the appellant's undertaking, contained in the notice, to execute a release.

The appellant, in his answer, insisted, that the last deed was void; and stated, that when he discovered that the lands in question were advertised for sale, he called on the district attorney and the marshal, showed him the deed to himself, and remonstrated against the sale; and that at the sale, he did, openly, and in the hearing of the purchaser, as well as others, when the lots were put up, publicly proclaim his having a deed of trust therefor anterior to the judgment; that the lots were not bound by the judgment; and that the purchaser would lose his money. He stated, also, that he declined executing the release, on the ground that it would destroy his title under the first deed; but that he has always been, and is, ready to execute any instrument as a joint trustee, with a proper proviso, or saving of his interest under the first deed.

The appellant, likewise, insisted on the inadequacy of the price, many of the lots being worth from 100 to 250 dollars each, or upwards.

The statement of the appellant, as to his declarations at the time of sale, was repelled by the testimony of the marshal, the auctioneer, *Goodman*, the complainant's agent, and three other witnesses, who denied their recollection of the circumstance; and the auctioneer and *Goodman* positively denied that any such declaration had been made. It was supported by one witness only, whose character and credit were impeached by witnesses on the part of the respondent.

*Goodman* deposed, that several weeks before the sale, he called on the appellant, and told him that his object was to become a purchaser under the execution, and wished information respecting the property; that the appellant showed him a map of the lots, and spoke of their advantages, and said nothing to deter him from becoming a purchaser. That the appellant did not, at any time during the conversation, say, that the marshal could not give a good title, or that the appellant, after the sale, would have any right or title to the lots. That during the conversation, the appellant gave him to understand, or expressly said, that he had a deed in trust, from *Edward Livingston,* of the lots aforesaid, for the purpose of enabling him to make partition

IN ERROR.
.....
ALBANY,
March, 1814.

LIVINGSTON
v.
BYRNE.

with the heirs of *Goodrich;* and that the said trust was held for the use of the *United States.*

The cause having been heard before his honour the chancellor, he decreed, on the 15th *September,* 1812, that the appellant should execute a release to the respondent, of all his right, title, and interest in the property purchased by the respondent; and, also, that the appellant should pay the respondent his costs, to be taxed.

*D. B. Ogden,* for the appellant, contended, 1. That this court, or a court of chancery, will never interfere and compel a specific importance, where there is a gross inadequacy of price.* The great inadequacy of the price paid by the respondent, in the present case, was too palpable to require any comment. The power of the court to decree a specific performance is discretionary, and is not exercised in all cases.† To be enforced, the contract must be certain, fair in all its parts, without fraud, and for an adequate consideration.‡ If there is any thing doubtful, or unreasonable in the contract, or any fraud, it will not be enforced.§ There is a distinction between an interposition of a court of equity to set aside a contract, or conveyance executed, and lending its aid to enforce a specific execution. In the former case, the court, by acting at all, deprives the party of his *legal* remedies; in the latter, by refusing to act, it leaves the party in full possession of his rights at *law.*

Moreover, the appellant, at the sale, gave notice to the respondent, of his claim to the property. Indeed, the case shows, that the respondent had full and seasonable notice. His agent called on the appellant to inquire as to the state of the property, and received information sufficient to put the respondent on his guard.‖ The smallness of the sum bid by the respondent, is proof that he acted under the influence of such notice.

2. A specific performance ought not to have been decreed, because it would compel the trustee to commit a breach of trust. The trusts contained in the deed of the 1st of *December,* 1808, are unexecuted, and if the decree of the court of chancery is confirmed, it will be impossible for the appellant to execute them.

3. The respondent purchased, with full knowledge of the deed of the 1st of *December,* 1803, and is, thereby, affected

* 1 *Bro. C. C.* 179.  1 *Vesey,* jun. 273.

† 1 *Vesey,* jun. 565.  4 *Bro. C. C.* 80.

‡ 1 *Vesey,* 12. 279.  7 *Vesey,* jun. 30.

§ *Prec. Ch.* 538.

‖ 1 *Atk.* 490. *Amb.* 313.

IN ERROR.
.....
ALBANY,
March, 1814.

LIVINGSTON
v.
BYRNE.

with notice of the prior trusts. It would be manifestly inequitable to permit him now to claim in opposition to them.

4. The judgment of the *United States* against *E. Livingston*, was docketed the 27th of *December*, 1803, and the conveyance in trust to the appellant was on the 1st of *December*, so that the legal estate was vested in the appellant, prior to the judgment. The *trust*, requiring a sale of the property, was not, either in law or equity, liable to execution, nor was any *lien* on it created by the judgment. There was nothing, therefore, on which the marshal could levy. Nothing could pass by the sale.

5. Further, the notice or advertisement of *Livingston, Gelston* and *Osgood*, was, that they would release their title, under the grant to them, *jointly*, of the 24th of *December*. It contained no suggestion that the appellant would release his separate claim on the prior deed of trust. There was, also, other property of *Edward Livingston*, to which the execution might be applied. And the conversation between the appellant and *Goodman* shows, that the appellant did not intend, or expect that the *Esperanza* lots were to be included in the advertisement, or sold; and the court will not compel a performance contrary to the intention of a party.*

6. Again, it is impossible to suppose that the appellant would have permitted property of so great value to be struck off for *eleven* dollars. It would have been a most flagrant breach of his trust; and there must have been some *misapprehension* or *mistake;* and, on this ground alone, a court of equity ought to relieve him from the performance of the agreement.†

7. The appellant was a mere trustee, and bound to defend the interest of his *cestuy que trust;* costs ought not, therefore, to have been decreed against him.

*Henry* and *T. A. Emmett*, contra. The ground of the appellant's defence, is the deed of trust to him of the 1st of *December*. The trusts in that deed were for partition, &c. and were of a secondary nature: and if they were done away by the subsequent deed of the 24th of *December*, the ground of the appellant's defence must fail him. Now, the last deeds to which the appellant is a party, includes not only the *Esperanza* lots, but all *Edward Livingston's* property. Both deeds cannot stand separately, and the last must prevail; for it is a joint

* 1 P. *Wms.* 302.

† 2 *Atk.* 203.

trust including the *first* trust and controlling it, and extinguish-
ing the deed of the 1st of *December*, so far as it conveyed the
lien to the appellant separately. The second deed contains all
that is to be found in the first, and every trust under the *first* is
provided for in the *second* deed, and may be executed under it.

The notice or advertisement of the marshal's sale, signed by
*Gelston*, *Osgood*, and the *appellant*, expresses it to be of every
part and parcel of *Edward Livingston's* property which was, or
could be, subject to execution, and mentions particularly the
property in question, in *Esperanza*. The sale was postponed,
and the *notice* continued under the same *names*, and no counter
notice, nor any qualification or exception of it, was ever made
or published by the appellant. The only reason he assigns for
not executing the release, according to the terms of the notice,
is inadequacy of price.

Admitting the deed of the 1st of *December*, 1803, to be ope-
rative, there was such a concealment of it, as must, after the
marshal's sale, render it nugatory. In regard to the *notice*,
good faith required that if any person signing that notice had a
separate and subsisting lien, which he meant to preserve or as-
sert, that he should have mentioned or explained it, in the same
notice. As this was not done, the conclusion was natural, that
nothing was reserved by any of the persons whose names ap-
peared to the notice. That the appellant forbade the sale,
rests on the testimony of a single witness, *Haskin*, whose cre-
dit was impeached by several respectable witnesses.

Where a party lets his title sleep, or does not forbid a sale,
he is for ever concluded. Neither *infancy* nor *coverture* is ad-
mitted as an excuse.* After such a public notice, to allow the
defendant to set up a title under the deed of *December* 1st,
would be sanctioning a most glaring fraud. As to the pretend-
ed verbal notice given at the time of sale, it could be of no
avail against the written or printed notice.†

Again, compelling the appellant to perform this agreement,
would not oblige him to commit a breach of his trust. The
trusts which he wishes to execute are the same in both deeds,
and the first trusts are merged in the last deed. The trusts
being thus created in favour of the *United States*, the marshal
might act as agent for all the *cestuy que trusts*. His sale extin-
guished all the rights under the first deed. The respondent is
invested with all the interests of the *cestuy que trusts*, who do

*1 *Fonbl.* 161.
b. 1. c. 3. s. 4.
1 *Vern.* 136. 2
*Vern.* 160. 10
*Ves. jun.* 475.

† *Sugden's L. of
Vendors*, 21, 22.
1 *H. Bl* 80. 6
*Ves. jun.* 830.

not complain in this case. It is only the appellant, a trustee, who is dissatisfied. A trustee must conform to all the dispositions made of the interest of the *cestuy que trust*, agreeably to the trust created.*

The sheriff's sale bars the trust. A trust estate is equitable assets, and may be sold under an execution. Our statute, in regard to the sale of lands under execution, goes farther than the *English* statutes.† The purchaser under the marshal's sale acquired all the right, title, and interest of both the *cestuy que trusts*. Having, therefore, the interests of all the parties to the deed of trust, he might waive the partition.

Mere inadequacy of price, alone, is not a sufficient ground to set aside the sale, or to afford relief in this case.‡

Besides, the appellant claims as a mere *trustee*. He has no interest at all. The *United States* and *E. Livingston* are the only parties who could apply to a court of equity for relief on this ground. This case is much stronger than those to be found in the books, in which a court of equity has refused to interfere, on the ground of inadequacy of price. Here is a judicial sale, on final process, at public auction, and under a statute.

As to costs; if the appellant has violated his agreement, even when acting as a trustee, and has thereby compelled the respondent to resort to a court of equity, he ought to pay costs. But, in fact, the appellant is not defending the rights of a *cestuy que trust*. The respondent, as purchaser, stands in the same relation to the appellant as the *cestuy que trust*, and he, in effect, is acting against his *cestuy que trust*.

*Van Vechten*, Attorney-General, in reply, contended that the appellant was aggrieved by the decree of the court of chancery, because he had been required to perform what he had never agreed to do. He is required to relinquish his separate rights under a former deed, because he had engaged to release rights acquired jointly with two others, under a subsequent deed. It is only this joint interest that is specified in the notice or advertisement; and the appellant ought not to be obliged specifically to perform what he never specifically promised. The argument that as the appellant joined in the notice to sell under the second deed of trust, he cannot set up the first deed,

*IN ERROR.*<br>ALBANY,<br>March, 1814.<br>LIVINGSTON<br>v.<br>BYRNE.<br>*2 Fonb. Equ. 190. b. 2 c. 8. s. 2. notes. 21 Vin. 515. Trust, (X.) Prec. Ch. 4 5 Gilb Eqt. Rep 100<br>† 1 N. R. L. 74. sess. 10. c. 37. s. 4. Waters v. Stewart, 1 Caines' Cases, 70. 2 Vern. 248. 10 Vin Abr. 544. pl. 6. note. Foote v. Colvin, 3 Johns. Rep. 222. Spencer, J.<br>‡ 7 Ves. jun 30 —34. Sugden, 167. Newland onContracts, 68. 10 Ves.jun. 68.*

IN ERROR.
.....
ALBANY,
March, 1814.

LIVINGSTON
v.
BYRNE.

is of no weight, for if the appellant can, by a *general* release, be made to convey more than is included in the second deed, such release would be more than he had promised to do; but if it contained no more than what was stated in the notice it would be useless.

There is no ground for the pretence of a concealment of the first deed, for the appellant told *Goodman* that he had an earlier separate deed.

As to the notice given at the sale; though the general character of *Haskin*, the witness to the fact, is impeached, yet his testimony as to this particular fact is not invalidated, but is rather corroborated by *Davis*, and other witnesses. It is incredible that the appellant would have suffered property of so great value to be struck off for 11 dollars, if he had not relied on the sufficiency of the notice given to the purchaser, and that his rights would not be devested by the sale.

Again, there is no consideration to support the agreement contained in the notice or advertisement, so far as regards the first deed. The inducement to, or consideration of, the promise arises wholly from the second deed, which is expressly mentioned in the notice. In equity there can never be a decree of a specific performance, where there is not a good and sufficient consideration. The appellant was willing to release as much as his co-trustees, that is, this joint interest with them; and it is unjust and unreasonable to compel him, under the terms of that notice, to release more.

Again, the appellant stands here as a trustee, and asks for aid in the faithful performance of his trust. The trust relative to a *partition* was important and essential, as it facilitated a division of the property, and thereby enhanced its value to purchasers. To compel the appellant to release, therefore, his interest as to this trust, would work a violation of his trust. A court of equity will even interfere to *prevent* the execution of a bargain that is contrary to the declaration of trust.*

It is said the *cestuy que trusts* do not complain, or ask the protection of the court, but the appellant stands here in their place, so as to render it unnecessary for them to apply to the court. The respondent does not stand in the place of the *cestuy que trusts*. If he did, it would be idle to apply to a court of equity to enforce the performance of what, it is said, the *law* has already done.

IN ERROR.
.....
ALBANY,
MARCH, 1814.

LIVINGSTON
v.
BYRNE.

But we deny that the rights of the appellant, under the first deed, are or can be made subject to sale under an execution. His *trust* is purely *technical*; and the observations of Chief Justice *Kent*, in *Waters* v. *Stewart*, are not applicable to such a trust.

If the trusts in the first deed were merged in the second deed, and the first deed was, therefore, inoperative, why is the appellant called upon to release his interest under that deed? There is a difference in the trusts vested in the two deeds. The first was to pay the *United States* the debt due to them, and the residue, if any, was to be paid to *E. Livingston*. But the second deed was in trust to pay the *United States*, and then to pay the other creditors of *E. Livingston*, and the surplus, if any, to go to *E. Livingston*. Thus, the second deed confirms the first deed, only creating further trusts.

The respondent seeks to produce a violation of trusts, which he admits are unexecuted.

The doctrine as to *judicial* sales is applicable only where the sale is regular, and there is no doubt or uncertainty as to the proceedings.

YATES, J. The leading question in this cause is as to the effect of the notice published by *Gelston, Osgood*, and the appellant; whether the promise to release, contained in it, was intended to embrace the right (if any exists) of the appellant, under the deed of the 1st of *December*, 1803, as well as the right of the three trustees under the deed subsequently executed.

The existence of the first deed was probably not known to two of the trustees at the time the last was executed, and must have been a transaction solely between the appellant and *E. Livingston*, to whom all knowledge of it had been confined, and, of course, at the date of the last deed it was not viewed by them as an obstacle sufficient to prevent its operation, the first deed never having been acted upon. This is the most reasonable inference to be drawn from the conduct of the appellant in causing the last deed only to be recorded, before this controversy commenced, and remaining silent as to the first deed, until after the marshal's sale. The testimony of those who attended that

sale conclusively supports the fact, as but one out of nine persons who were present, knew of even a suggestion by the appellant that he claimed a right to the premises under it, and the testimony of that witness stands so directly impeached as to destroy his credit altogether. The conversation with the appellant, stated by *Goodman* to have taken place several weeks before the sale, may have alluded to the first deed of trust, but was evidently never intended as an assertion of right under it, and was accompanied with conduct and declarations on the part of the appellant, repelling the idea of such an intention ; and, on the contrary, rather indicating a desire to induce a purchase, than prevent a sale, and is too indistinct and uncertain to establish the fact of notice. It cannot be supposed that he would exhibit maps, and speak of the peculiar advantages of those lots, with any other object than to forward the sale. The same witness also states that nothing was said which was calculated to prevent his becoming a purchaser. Had he intended to purchase, he ought not to have relied on this loose conversation as proof of a parol notice.

Without, therefore, adverting to the objection that such notice is not in issue in this cause, its sufficiency to destroy or invalidate the printed notice might well be questioned. *Sugden*, in his treatise of vendors and purchasers of estates, in remarking on sales by auction, (page 21.) says, great care should be taken to make the particulars and conditions accurate, for the auctioneer cannot contradict them at the time of sale, such verbal declaration being inadmissible as evidence. I do not cite this to show that the rule on this subject is inflexible. It may, perhaps, be correctly departed from, in some cases, where the particular condition is equivocal, or where it is undeniably proved that the purchaser had, in the most explicit manner, particular personal information given him of the encumbrance previous to the day of sale. Such notice, however, has not been satisfactorily brought home to the respondent in this case. It was incumbent on the appellant, in that conversation, explicitly to have asserted his claim ; and the written notice published by him with the other trustees, ought to have contained an explanation, and an avowal of his pretensions under the first deed, without which his present claim gives a fraudulent operation to

*IN ERROR.*
.....
ALBANY,
March, 1814.

LIVINGSTON
v.
BYRNE

the notice, by misleading innocent purchasers, and, therefore, ought not to be tolerated even in a trustee.

I do not, however, believe, that the appellant intended fraudulently to conceal the first deed, at the time the notice was published. I am rather inclined to think, as before stated, that he considered it as an abandoned and inoperative instrument.

*Edward Livingston,* the same grantor, executed this second deed for the same premises, and the appellant accepted the trust, with *Osgood* and *Gelston,* with perfect knowledge that no act had been done to prevent the operation of it. He knew that the first deed had lain dormant, and did not hesitate to join in the publication of the notice; no doubt, at that time, with a *bona fide* intention of releasing to the purchasers any claim he might have on the premises. His present claim, as trustee, under the first deed, appears to be an afterthought; and may, perhaps, have arisen from the small amount for which the lots were sold.

The conduct of the appellant, and *Edward Livingston,* having thus operated as a concealment of the deed of the 1st *December,* 1803, and the trustees in the deed of the 24th *December,* 1803, having accepted the trust, and acted under it, so far as to publish the notice promising to release the purchasers, at the marshal's sale, on which the respondent must have relied at the time, and the trusts in both being substantially the same, the last deed ought to operate as an extinguishment or surrender of the trusts under the first deed; at least, so far as to prevent the appellant, in the release required of him, to reserve any right under it, contrary to the true interpretation of the notice; and, in the view I have taken, contrary to his intention at the time of the publication of it.

But, it is said, that if the appellant is obliged to perform, he will be guilty of a breach of trust. That is not so; the notice published by the assignees, promising to release to purchasers, and inserted in the advertisement under the *fi. fa.* became thereby a condition, incorporated in the sale, and cannot be a violation of the trust, but rather in furtherance of the execution of it. It was, in fact, adopting the marshal's contemplated sale as their own act; for they might make him their agent to sell the property, a fact which this court are warranted to presume, from the notice itself. His selling was in pursuance of the powers given the trustees by the grantor, which concur-

IN ERROR.
.....
ALBANY,
March, 1814.
~~~~
LIVINGSTON
v.
BYRNE.

rence in the sale, as their agent, was not inconsistent with his duty as marshal, under the *fi. fa.* and the avails of the sale being for the benefit of the *cestuy que trusts*, it ought to be deemed an execution of the trusts contained in both deeds. The making of partition was only secondary, and subservient to the interest of the *cestuy que trusts ;* and, being under their control, it was competent to the respondent to waive that. Having thus obtained the right of those entitled to the beneficial interest, a consummation of this sale, according to the conditions published by the trustees, cannot be withheld, on the ground, that calling on the appellant to release, would be obliging him to do an act in violation of his trust.

A sale made at auction, and under process of law, ought not to be invalidated for mere inadequacy of price, without additional circumstances to justify it. This principle is stated by Lord *Eldon*, on the rehearing of the case of *White* v. *Damon*, (7 *Ves.* jun. 34.) and in the case of *Burrows* v. *Locke*, (10 *Ves.* jun. 474.) It is necessary to secure proper confidence on the part of purchasers at sales of this description, and to render titles, if fairly obtained, certain, and not liable to be impeached by the various opinions as to its value. In the case now before us, no allegation of fraud appears. There is no part of the respondent's conduct which will warrant the suspicion of unfairness. He was the highest bidder, in the presence and hearing of the appellant himself, and of a number of other citizens, who might have enhanced the price upon him, if they had been so disposed. The respondent having thus correctly obtained the marshal's deed for the premises, with the knowledge of the trustees, and purchased under their promise to release to him, the appellant ought, in good faith, to execute such release, without any proviso or condition, which could not have subjected him to any responsibilities; and this, according to the view I have taken of the subject, it was his duty to do as trustee. He, therefore, ought not to have refused to execute the release when tendered to him, by which improper and unnecessary refusal he has made himself liable for costs. My opinion, accordingly, is, that the decree of his honour the chancellor be affirmed in all its parts.

VAN NESS, J. was of the same opinion, except as to the decree

being affirmed with costs, which he thought ought not to be allowed.

IN ERROR.
.....
ALBANY,
March, 1814.
LIVINGSTON
v.
BYRNE.

SPENCER, J. concurred in the opinion of Mr. Justice *Yates*, that the decree ought to be affirmed with costs.

THOMPSON, Ch. J. not having heard the argument of the cause, gave no opinion.

SANFORD, Senator. My opinion is, that the decree of the court of chancery ought to be affirmed. Without attempting to discuss the cause at large, or to answer the various objections which have been made to the decree, I will, with as much brevity as possible, state the principal grounds of my opinion.

If the deed of the 1st of *December*, 1803, was ever valid at all, it appears to have been waived, or relinquished, by the appellant, by the public notice of the 12th of *July*, 1805, subscribed by himself, *Gelston*, and *Osgood*. That notice was an engagement that the subscribers would release all their right, title, and interest, in the property, which was about to be sold by the marshal, if it should be required by the purchasers. It was also, by fair construction, an assurance that the assignees, subscribing the notice, had no title or claim in themselves, incompatible with that which they engaged to release. It would not be supposed, by those who might read this notice, that either *Gelston*, *Osgood*, or the appellant, had a latent title, which would defeat, not only the marshal's title, but also their own joint title. Such a supposition would be totally repugnant to the tenor and nature of their engagement, and would imply that they intended to practise a deception. It is too much to be supposed that they promised one thing, in terms, and, at the same time, made a silent reservation of another, which would render the promise ineffectual and useless. The notice clearly implies, that the assignees had no title adverse to that which they promised to convey. If either of these assignees had any separate claim, or latent title, which he desired to retain, it was his duty to reserve or except it expressly, in the written notice. It would be against all equity and justice, that one of them should now set up a claim not disclosed in the notice, though then existing, and totally destructive of the title

*IN ERROR.*
.....

ALBANY,
March, 1814.

LIVINGSTON
v.
BYRNE.

which he engaged to convey. I therefore regard this pub-. lic notice as a declaration by the assignees, that they, or either of them, had no claim to the lands of *Edward Livingston*, inconsistent with their own title as assignees. The appellant must be bound by this act, and cannot, afterwards, set up a latent title, which he did not then assert.

The objection of inadequacy of price, is not applicable to this case.

*March* 24th, 1814.

The court being unanimously of opinion that the decree of the court below ought to be affirmed, it was, thereupon, OR-DERED, ADJUDGED, and DECREED, that the decree of the court of chancery be, in all things, affirmed; and that the appellant pay to the respondent one hundred dollars, for his costs and charges, in and about his defence in this court, and that the record be remitted, &c.

Judgment of affirmance.