Judge Wright
delivered the opinion of the court:
*Beily, the complainant, claiming to have title and possession of certain lots of ground in Cincinnati, seeks the aid of this court to quiet his title, and to compel the defendants to release claims by them set up to the property. The proceeding is predicated on section 14 of the chancery act, 29 Ohio L. 83, which provides that !i any person having the legal title ,and possession of lands may file a petition against any other person setting up a claim thereto; and if the complainant establishes his title to said lands, the defendant shall be decreed to release his claim and to pay the complainant his costs, unless the defendant, in his answer, shall disclaim all title or claim to such lands, and offer to give such release to the complainant, in which case the complainant shall pay to the defendant his costs, except for special reasons the court shall otherwise decree.” The case made is this:
Before the year'1820, one Hafer recovered a judgment against the Cincinnati Manufacturing Company, and levied an execution on the property in question. This is the oldest lien.
*304 The defendants recovered a judgment against that company on-October 12,1820, and levied an execution upon the lots on January 30, 1821. This judgment was suffered to lie without execution* from June 19, 1823, until December 24, 1829, when it was revived by scire facias.
Davies and others recovered a judgment against that company on October 12, 1820, and levied execution upon the lots on January 31, 1821. Writs of venditioni exponas were issued upon this-judgment on April 2, 1822, June 25, 1823, and November 11, 1823. On December 15, 1823, a sale was made on the last vendí, to Davies & Co.
Lytle and Avery recovered judgment against the company on-December 27, 1820, and levied execution upon the lots on February 9, 1821. Upon this judgment and levy vendis were issued on March 27, 1824, and March 23, 1827, and June 16, -1829; and on the latter writ the lots were sold to the Miami Exporting-Company. This judgment was assigned to the Bank of the United States on April 13, 1826.
*On September 3, 1829, the counsel managing the three last judgments, entered into an agreement by which the sales on the two last were set aside, and the lots subdivided in order to effect better sales, and a new inquest and appraisement had in parcels. It was further agreed that execution should be issued on the Lytle and Avery judgment, then owned by the Bank of the-United States, to the November term, 1829, on whicn the lots should be offered for sale, and that upon such sale a clear title should pass to the purchaser, and that the priorities of the liens under the several judgments and levies, should be tried in such mode as might be thought advisable, and the proceeds of sale appropriated accordingly. Under this agreement an execution issued upon the Lytle and Avery judgment, on September 10, 1829, on which the lots were sold to the Bank of the United States for twenty-six thousand eight hundred and sixty dollars, upon November 16, 1829. This sale was affirmed by the court, and a deed made by the sheriff in pursuance-of the order of confirmation. The Bank of the United States subsequently sold and conveyed these lots to the complainant.
The proceeds of this sale to the Bank of the United States was by common consent first applied to satisfy Hafer’s judgment. As to the residue, application was made to the court to direct the dis *305 tribution, in behalf of Davies & Co. and of the defendants, and of the bank. The order of distribution was brought before this court and decided in January, 1831. See 4 Ohio, 459. The court, determined that the judgments of Davies & Co. and the Miami Exporting Company had become dormant, because at the time of the sale to the bank, no executions had issued upon them for more than'five years, and so were not entitled to any distribution of the proceeds oí sale, and that all advantage arising from the previous sales on these judgments had been waived by their voluntary appearance in court and setting them aside.
Since this decision, the Miami Exporting Company have taken out execution upon their judgment, sold a part of the - premises by the sheriff, have themselves become the purchasers, and obtained a deed. Upon this they claim to hold the lots, and threaten ejectment to recover possession.
The view we take of the case renders it unnecessary to follow the counsel for the defendants through the various ^points discussed with much ability in the argument. The simple question is, has the Miami Exporting Company authority to go back of their agreement under which the property was sold to the-Bank of the United States, and sSt up their judgment lien. There is no pretense of fraud or unfairness on the part of the bank, in procuring the agreement. It was under standingly made by the parties in interest, to obtain a better price for the property, leaving the right of each to be made operative upon the proceeds, to be settled as they should be advised. Their claims were made in a court of competent jurisdiction, and settled, the claim of the Miami Exporting Company being adjudged invalid after a severe contest. If the decision bo erroneous, this court has no power to renew it; while the decision remains unreversed, it is conclusive upon the subject of it. The Miami Exporting Company was an active agent in procuring the sale on the Lytle judgment. She agreed to it, and agreed moreover, “that a clear title should pass to the purchaser under that sale.” “How can a clear title pass to the purchaser, if this company can be permitted to set up against the lots the lien of their judgment? ” The sale, under the agreement of the parties, as .it regards their claims against the purchaser, is precisely as if it had been made under either or all of the judgments claimed to be liens; the same as it regards the Miami Exporting Company as if made upon execution on her judgment. *306 Each of the parties agreed to support a sale for the benefit of all, and to settle their priority of lien in a contest for the proceeds of .sale. It would be a gross fraud upon the purchasers, if either of the parties, having thus induced a purchase upon the assurance that a clear title should pass, were permitted to set up their prior lien against the lots, and a title against that passed by their own agreement to the purchaser. “It is a well-established principle in equity, that if a person, having a right to an estate, permit or encourage a purchaser to buy it of another, the purchaser shall hold it against the person who has the right; ” and this rule prevails even against femes covert and minors. Smiley v. Wright, 2 Ohio, 510; 16 Ves. Jr. 253; 4 Munf. 449; 11 Johns. 564; 6 Johns. Ch. 166; 9 Mod. 35; 6 Ves. 174; Cory v. Girthen, 2 Mod. 40; 1 Vern. 136; 7 Ves. Jr. 231, 236 ; *5 Ves. Jr. 688, 689; 2 Atk. 33; Jeremy Eq. 387-389; 4 Johns. Ch. 65; Ohio, 318.
The title and possession of these lots being in the complainant, he makes a case for relief under the statute. The defendants will be perpetually enjoined from enforcing the lien of their judgment against these lots, and ordered to release the complainants and pay costs.