## May & Filkin vs. May and others.

Where mortgaged premises, sold under a decree of foreclosure, were worth $5000, and were put up for sale by the master, and two bids, one of $1800 and another of $2000 were made thereon, and the master then suspended the sale for some considerable time, and in the mean time the person making the bid of $2000 was induced by some one to retract his bid, and the master, instead of falling back upon the previous bid of $1800, which had been made by a person who had left during the suspension of the sale, put up the premises anew, and struck them off for $560, leaving a large amount, due to a judgment creditor of the mortgagors, unpaid, such judgment creditor being ignorant that the sale was to take place ; the court, upon application of the judgment creditor, set aside the sale, as irregular, and ordered a re-sale.

It was also Held, that the purchaser ought to have presumed, that a court which proceeds upon equitable principles would not sanction such a sale, if the parties injured by the error of the master should apply to set it aside ; and that he was not entitled to the costs of opposing the application for that purpose, although there was nothing to show that the bid of $2000 was withdrawn by his management, or in consequence of his collusion with the parties to the fraud.

This was an appeal from an order of the vice chancellor of the third circuit, setting aside a master's sale, under a decree in a foreclosure suit. The premises in question were worth five

or six thousand dollars, and were sold by the master, and struck off to the appellant T. W. Newcomb, for $560, the amount claimed by the complainants as due upon the decree, and chargeable upon the premises. The respondent E. Baker was a judgment creditor, of the owners of the equity of redemption, to the amount of about $10,000; and his judgment was the first lien upon the mortgaged premises, subsequent to the mortgage of the complainants. But, as he was entirely ignorant of the proceedings in the foreclosure suit, or even of the existence of the mortgage, having been previously assured by his judgment debtors, that his judgment was the oldest lien upon the premises, he did not attend the master's sale to bid for the premises. Several other persons, however, who knew the sale was to take place, attended for the purpose of bidding upon the premises. The premises were put up by the master, and E. W. Walbridge, who was authorized to buy the premises for a third person, made a bona fide bid thereon to the amount of $1800. W. Newcomb, another person, who attended the sale for the purpose of purchasing the premises, then bid the sum of $2000. In that stage of the proceedings, the master suspended the sale for some considerable time, and until Walbridge had left the house where the sale took place; and in the meantime W. Newcomb had been induced, by some means, to retract his bid of $2000. The master, instead of falling back upon Walbridge's bid of $1800, or suspending the proceedings a few minutes and notifying him that the bid of $2000 had been withdrawn, put up the premises *de novo*, and subsequently struck them off to the appellant, for the $560, the amount claimed to be due to the complainant upon the decree, as against these premises.

*J. D. Willard*, for the appellant.

*Ira Harris*, for the respondent.

THE CHANCELLOR. It is not necessary to inquire, in this case, whether the appellant took any active part in, or was privy to, the attempt on the part of the Reeds to defraud the respondent

of the lien of his judgment on the mortgaged premises. For it would be entirely inconsistent with the justice of this court to permit such a sale to stand, even, if it was reduced to a positive certainty, that the appellant had been allowed to purchase the mortgaged premises, for one tenth of their real value, by the mistake of the master, in suspending the sale, and then putting up the premises de novo, after the $2000 bid was withdrawn; and without any management on his part, or with his privity. Under the circumstances which occurred at the sale, the master should either have adjourned the sale to a future day, or should have put up the premises at the bid of Walbridge of $1800; or at least he should have suspended the sale a few minutes longer, and sent him word that the premises stood for sale upon his bid, in consequence of the withdrawal of the bid of W. Newcomb.

Again; the affidavits before the vice chancellor irresistibly lead to the conclusion, that there was an unconscientious attempt, on the part of some person, to have the mortgage foreclosed, and the premises sold, in such a manner as to deprive the respondent of the benefit of his judgment lien upon the mortgaged premises, and upon the surplus value of the premises beyond the amount of the mortgage debt. Who it was that requested the master to postpone the sale for a time, when from the competition which had taken place there was danger that the property might be sold for something like its real value, or whose interference it was that induced W. Newcomb to resile from the bid of $2000 which he had made for the mortgaged premises, does not appear. But it is impossible to wink so hard as not to see that, by the improper interference and management of some one, the property upon which the respondent's judgment was a lien, was suffered to pass into the hands of the appellant, for a sum which was wholly disproportioned to its real value; and for no other apparent object than to deprive the holder of the judgment of his legal and equitable right to priority of payment out of the surplus proceeds of the mortgaged premises. And I cannot believe the appellant did not at least suspect that some improper means had been resorted to for the purpose of preventing competition at this sale, and to enable him to buy in the premises below their real cash

value. If so, he was bound to know that a court, which proceeds upon equitable principles, would not permit the sale to stand, in case the judgment creditor, who had been thus defrauded of his lien, should think proper to apply to open the sale.

The delay in making the application is sufficiently accounted for. And as the purchaser had done nothing to alter the rights of the respondent subsequent to the giving of the deed, by the master, but had suffered the owners of the equity of redemption to remain in the undisturbed possession of the mortgaged premises down to the time of the application to the vice chancellor, all he had a right to claim was a return of his purchase money and interest; which the order appealed from directs the respondent to pay. If the purchaser had submitted to a re-sale, upon the hearing of the petition, the question whether he should have his costs might have been a proper subject of consideration. But when he employed counsel and instructed them to insist upon his right to retain the unconscientious advantage he had obtained, through the frauds of some one, he could not expect to have costs allowed to him for an unsuccessful resistance to this equitable claim of Baker to relief.

The order appealed from is not erroneous, and it must be affirmed with costs.