Sedgwick, J. (at special term).
The plaintiff claims that the sale made by the sheriff, was i in violation of the thirty-eighth section of 2 R. S. p. 269. That section is—
“ When real estate offered for sale by -virtue of any execution,.shall.consist of several known lots, tracts, or parcels, such- lots,- tracts, or parcels -shall be separately exposed for sale, and if any person claiming to be the owner of any portion of such estate, or of such -lots, tracts, or parcels, or either of them, or'claiming to be entitled by law to redeem any such portion, shall require such portion to be exposed for sale separately, it shall be the duty of the sheriff to expose the same for. sale accordingly.”
“No more of any real estate shall be exposed for sale, than shall appear necessary to satisfy the execution.”
This seems (see reviser’s notes) to have been meant to be declaratory of the law, as it then stood, except *529 ing that part allowing grantees to require a severance, which was proposed in order to facilitate a redemption by them. Nor, has there been, either before or after the Revised Statutes, any diversity in the cases as to this part of the sheriff’s duty under an execution.
There is no doubt that the statute imposes a duty upon the sheriff. It pre-supposes that that officer must learn the situation of property before he sells, and shall sell in obedience to its direction. In some cases the facts will be such, that he is obliged to exercise a discretion which is judicial in its nature, in acting upon one set of circumstances, opposed by another set. Then an honest exercise of that discretion is as final as the action in like case of any judicial tribunal (Litchfield v. Regular, 9 Wall. 577; The Secretary v. McGanahan, Id., 311; Gaines v. Thompson, 7 Id., 349).
In any case, the action of the sheriff, no matter how great the irregularity of the sale, is not void (Cunningham v. Cassidy, 17 N. Y. 276; Wood v. Monell, 1 Johns. Ch. 503).
It is but voidable on the application of the aggrieved party, who, not having waived his rights, takes, in due time, a proper proceeding for the purpose of setting aside the sale. Such a party has a right to insist that the sheriff should have performed his duty under the statute. If the non-performance of that duty has given cause to set aside the sale, such should be the result against a purchaser at the sale, who had notice of the non-performance of duty, and much more against a purchaser who had requested and led the sheriff to make the sale in the forbidden manner (May v. May, 11 Paige, 203; King v. Morris, 2 Abb. Pr. R., 295; Requa v. Rea, 2 Paige, 340).
The purchaser in this case, as attorney for the judgment creditor, was the cause of the sheriff* s using the description of the property he did use for the sale *530 and of the sale being made according to that description. If this led to or was a violation of the plaintiff’s legal rights, the sale should be set aside against the purchaser here.
The plaintiff maintains that the property should not have been sold in one parcel. If the facts were such, that if the sheriff had not relied upon the purchaser for information, but might have so exercised his discretion, that but a part of the lot would have been set up for sale, then it might be right to consider if the sale should not.be treated as invalid to pass the title to the purchaser, on the ground that the plaintiff had a legal right to whatever possible benefit might have followed the sheriff’s exercise of discretion (Russell v. Conn, 20 N. Y. 83; Lanergan v. People, 39 N. Y. 44).
It would then be necessary further to decide whether in the facts of the case there was anything to call for the judgment of the sheriff, as to whether anything less than the whole lot should be sold. If from the state of the property it would be impossible to subdivide it, then the sheriff could not have used discretion which might have benefited the plaintiff.
The real estate in question did not consist of several known lots in the meaning of the Revised Statutes. It was know as but one lot. There was nothing to indicate that there had been a previous purpose on the part of the owner to present it to others as in fact subdivided. The statute contemplates that there should be some indication of this to constitute what it' meant by several known lots. The section implies a contrast between land in fact subdivided and land capable of subdivision. Nor did the plaintiff require that the sheriff should sell less than the whole at one time.
Distinct from this injunction of the Revised Statutes is the further prescribed duty of the sheriff to sell no more than appeared necessary to satisfy the execution. Before the Revised Statutes it was deemed an abuse of *531 power for the sheriff to sell more (Woods v. Monell, 1 John. Ch. 502; Tiernan v. Wilson, 6 Id. 411). The case last cited, says, “ It is not to be disputed that a sheriff ought not to sell at a time more of the defendant’s property than a sound judgment would dictate to be sufficient to satisfy the demand, provided the part selected can be conveniently and reasonably detached from the residue of the property, and sold separately.” It would be full of risk to say that a sheriff would be justified in selling the whole of one parcel of vacant land in this city, thirty-seven feet by one hundred feet, to satisfy an execution of one hundred and seventy dollars. On the .other hand, when custom and use, the best tests, have found that for general purposes the most convenient and valuable size for a city lot is that in this case, viz., twenty-five feet by one hundred feet, I think it would be doubtful if the sheriff is justified in making an experiment as to the effect of a subdivision upon the gross value. That is in the case of a vacant lot.
We have here a peculiar case. Although but one lot, there was upon it two buildings separated by a space of twenty feet; they were occupied as tenement houses, and one was altogether independent of the other in respect of their use. Each had a. rental as large as many houses occupying full lots. No doubt each would have brought, on even such a sale as this was, just as much as was paid for the whole, whether there had been given to the rear a right of way through the front part of the lot or not. That is but one element under the statute. The other is that pointed out in Tiernan v. Wilson, viz.: What is the effect of selling part upon the value of that left unsold ? The preponderance of .testimony in this case is that an owner could get the most out of the property, by selling the houses separately. In such case the owner has the power to carve up the estate so as to suit circumstances. The *532 sheriff has no such power. He sells things in the state in which he finds them. If he had sold either part separately, the law perhaps might have attached as a consequence, that there should be a right of way through the front lot. That has been held to be the consequence of selling off under an execution part of a debtor’s land, which shuts the remainder from a highway. In these cases, the operation of the execution is similar to that of an extent at common law, and where property is appraised and set off to the judgment creditor (Taylor v. Townsend, 8 Mun. 411; Parnam v. Wend, 2 Mun. 203; Allen v. Kincaid, 2 Fairfield, 11 Maine, 155). I have doubts that such a rule is applicable to a city of this kind or to our mode of selling under execution. Moreover, in this case the right of way for the back building passes under the beams of the floor of the second story of the front building. I hesitate to decide that in making the subdivision the sheriff would not be making an experiment or speculating upon contingencies, and so use a discretion the statute did not mean to give him. I go to other aspects of the case.
The price given in this case by the purchaser, was very far below the value of the property. The inadequacy was so strong and manifest that it must be impossible to state it to a man of common sense, without producing an exclamation at the inequality of it (Gwynne v. Heaton, 1 Bro. 8).
There has justly been such sensitiveness on the part of the courts of this state, against invalidating sales for mere inadequacy of price (Livingston v. Bryne, 11 John. 555; Tripp v. Cook, 27 W. 143; Marsh v. Ludlum, 3 Sand. Ch. 55), that I can not rest the case on that alone; although here the inadequacy of price is so great, as to be at least on the verge of a presumption that there was in the conduct of the sale, some undiscovered violation of the plaintiff’s rights (American Ins. Co. v. *533 Oakley, 9 Paige, 259, note 4 to § 244, Story Eg.), for instance, gome keeping away of bidders.
The general rule must be observed, that to set aside-a sale, there must in addition to inadequacy of considation be some other circumstance, e.g., surprise, ignorance, mistake, inadvertence. It will be seen, however, in the cases, that a great inadequacy has refined the-ingenuity of the learned judges in extracting from the the facts of the cases sufficient to justify annulling the sale (Griffith v. Hawley, 10 Bosw. 588; King v. Platt, 37 N. Y. 155; Dwight’s case, 15 Abb. 259; King v. Morris 2 Id.; Francis v. Church, Clarke Ch. R. 475; Gardner v. Schermerhorn, Id. 105; Hoppock v. Conklin, 4 Sandf. Ch. 582; May v. May, 11 Paige, 203: Brown v. Frost, 10 Id. 245; Requa v. Rea, 3 Id. 340; Williamson v. Dale, 3 John. Ch. 292; Lansing v. McPherson, 3 Id. 426; Billington v. Forbes, 10 Paige, 487; Mulks v. Allen, 12 W. 253; The President, &c., oi’ Ontario Bank v. Lansing, 2 Id. 261).
In Gwynne v. Heaton, already cited, the chancellor said that inadequacy of price combined with considerations of public policy would set aside a bargain. “The-heir of a family dealing for an expectancy in that family, shall be distinguished from ordinary cases, and an unconscionable bargain made with him shall not only be looked upon as oppressive in the particular instance, and, therefore, avoided, but as pernicious in. principle, and, therefore, repressed (1 Bro. 10).
In Howell v. Baker (4 J. C. R. 120), Chancellor Kent, was of the opinion, although he did not decide the case on that position, that if an attorney for a judgment creditor had the management of a sale under execution and bought in property at it, he was a trustee for the owner of the property. He cited for this, Lord Thurlow in Hall v. Hallet, 1 Cox, 134. Chancellor Walworth, in Hawley v. Cramer (4 Cow. 717), said in reference to Howell v. Baker that he did not *534 agree that an attorney under such circumstances was trustee for the debtor. He said he was a trustee for the creditor, his client, but that he owed no duty to the debtor. Cramer v. Hawley did not involve the question whether an attorney controlling a sale owed such a duty to the owner that he could not become a purchaser. So that, as to that general proposition, there seems to be no authority in our courts.
If it were granted that the attorney did owe to the owner a duty, by reason of the former having control of some part of the sale that was likely to affect the price to be given for the property on the sale, there could be no doubt, as I think, that public policy would forbid that his interest as a bidder should be hostile to his duty to manage the sale so that the best sum be procured.
The sheriff having received information as to property that should be sold, is bound to do all those things, as to form and time of notice, and time and place of sale, which the law has prescribed, as calculated to do justice to both sides, in securing the best price on the sale. The sheriff has some discretion as to each of these particulars. For that reason he must be disinterested in the performance of his duty, and can not become a purchaser at his own sale. This is the subject of a statute. Yet such would have been the case without a statute (Carpenter v. Stilwell, 11 N. Y. 61). This duty he owes in part, of course, to the owner. How, if ah attorney in the performance of his professional obligation to his client, is allowed by the sheriff to control and manage the sale, and in this way to do those things which have led to the sheriff’s being forbidden to become bidder, he stands in the sheriff’s shoes, and is subject to the same disabilities. When he buys he may be a trustee for his client at the latter’s option. If the law permits him to become a purchaser as against the debtor, he will be led to devise means (at least there
*535 may be that temptation) to avoid fulfilling this trust to his client.
I think the reasons for an attorney being a trustee for the owner, escaped attention in Cramer v. Hawley. ‘There is no magic in the terms, trust and trustee.” “ He is a trustee in a technical style who is vested with property in trust for others, but every man has a trust to whom a business is committed by another, or the charge and care of any concern is confided or del egated ,by commission” (1 Lead. Cases in Eq. 209, quoting the language of counsel in The York Building Company v. Mackenzie, 8 Tomlin’s Brown P. C. 42; 64). The principle applies to all persons, judicial or private, ministerial or counseling, who in any respect have a concern in the sale of the property of others (1 Lead. Cases in Eq., 209, Carpenter v. Danforth; Davone v. Fanning, 2 J. Ch. 252; Michaud v. Girod, 4 How. [U. S.] 554; Dickenson v. Codwise, 1 Sandf. Ch. 214; Van Epps v. Van Epps, 9 Paige, 241; Tomey v. Bank of Orleans, Id. 650; Dobson v. Racey, 3 Sandf. Ch. 60; Case v. Carroll, 35 N. Y. 389).
The principle in respect of the attorney purchasing at sales, which is referred to in Howell v. Baker, exists in Great Britain, and the case of Hall v. Hallet is approved there. In Atkins v. Delnege (12 Jr. Eq. 1) it is said that no solicitor having the conduct of a sale under a decree can purchase at it, (Harrison v. Guest, 6 DeG. Met. & G. 435; Price v. Maxon. cited in the argument of counsel in Watson v. Beach, 1 Ves. Jr.). In Ex parte Hughes (6 Ves. 624), Hughes, who was a creditor of a bankrupt, had given advice as to the up-set price at which the bankrupt’s property should be set up at the bankruptcy sale. In that case, it was considered that, therefore, he was incapacitated from bidding and purchasing.
If the principle is applicable to this case, it can make no difference that the purchaser had managed or *536 controlled but a part of the preliminaries of the sale. If he could become a bidder, there would be the temptation to arrange that part to suit his own interests. Nor do I see that because the creditor himself may become a purchaser that, therefore, his attorney may. The former does not and the latter generally does interfere with and shape the details of the proceeding. But if the creditor in an execution should undertake such a thing himself, I think he would undertake a duty to the debtor, which as a matter of-policy, should permit the debtor to consider him a trustee. Justice would of course be done the creditor in the terms of opening the sale.
Therefore I consider that in this case the purchaser bolds his title to the property as the trustee of the plaintiff, on the broad principle that has been examined. His client’s demand has been satisfied by payment, he having according to the testimony renounced any interest in the purchase. Beyond this, however, this must be taken together with the great inadequacy of price given. The something that the law requires to be combined with the inadequacy, is found in the relation of the purchaser in this action to those circumstances of notice, &e., which it is the theory of the law should lead to the value of the property being obtained at a public auction. The law can not expect that in general a debtor can put his finger on a defect in such proceedings.
The plaintiff’s rights do not, however, rest alone on what has been considered. The kind of notice virtually given by the purchaser calls for particular attention. The statute requires that in every such notice the real estate to be sold “shall be described with common certainty, by setting forth the name of the township or tract and the number of the lot, if there be any, and if there be none, by some other appropriate description” (§ 35). This notice is given that the *537 public whom the law invites to such auctions, may be able to know where and what, is the property they are about to purchase (Jackson v. Delancey, 13 Johns. 539), and that all may bid and become purchasers on equal terms (Mason v. White, 11 Barb. 185). The description of the property in this case, was, we have said, framed by the purchaser and furnished to the sheriff.
If it was defective, he is not a tona fide purchaser under § 40. It may be that this notice was not indefinite or uncertain under Jackson v. Rosevelt (13 John. 98). But no one from the description itself could have found the property. Its bounds with one exception were by lots on a map. It was not stated where that map was. The exception referred to is one lot serving as a boundary, and was said to be now or late of the property of Van Siller. That gave no information. The only ways that the people to whom that notice was addressed could find the property were, first, to find the maps, and then get information on which to go further in the examination, or else to proceed to the block in Forsyth street, and ask perhaps from door to door for facts, from which it might be spelled out where the land was. The description did not have the quality of common certainty for the purposes of that notice. It is easy to give the street number. In this .case, not even an alleged quantity of land offered for sale was stated to attract bidders. This serves to partly explain why there was no chance bidder ready to run the chance of paying more than -two hundred and sixty dollars for a property, whose net rental was more than thirteen hundred dollars.
The other facts that attended the sale, furnish thought as to other ground for treating the purchaser as-a trustee for the plaintiff; but I do not think that the whok facts together would justify my taking that ground.
*538 There were two sureties on the undertaking on appeal. The property was sold at noonday in the month of July, and although the only bidder was the attorney for the creditor, there was no adjournment. I am so convinced from the testimony of the integrity and honesty of the purchaser, that I do not look to these facts to see if they show that there was a purpose that the property should be sacrificed". I only now detail them to show the adverse circumstances under which a debtor’s property may be exposed to sale, in cases where there are no evil intentions. This should lead to a scrupulous observance of whatever is meant to protect his interests. It also gives strength to the argument that on grounds of policy no one that has taken part in conducting the sale should be allowed to purchase at it.
The inadequacy of the price paid, with the fact that the notice was of the kind specified (for which the purchaser was responsible), requires that the defendant,. Lindsay, should be deemed to hold the property as if as to him there had been no valid sale. This is, I think, the necessary result apart from any considerations of general policy that have been looked at. He must, therefore, be adjudged to execute and deliver to the plaintiff a conveyance of the property.
Having reached this conclusion, it is hardly necessary to say that any laches, or neglect, or want of vigilance on the part of the plaintiff that may have existed, do not give a reason that the purchaser as his trustee should not fulfill his duty to him.
I have considered the objection taken by the learned counsel for the defendants, that the relief, if any, that the plaintiff was entitled to, should be asked on a motion in the action in which there was judgment and not in an original action (McCotter v. Jay, 30 N. Y. 80; Brown v. Frost, 10 Paige, 245; Nicholl v. Nicholl, 8 Id. 349; Groff v. Jones, 6 W. 523, and other cases). I *539 think the rule applies to those cases where the decree or judgment specifically provides for the sale of the property. Then all proceedings connected with the. sale are in the action and to be passed upon in the action and under the common rule as to res adjudícala, are deemed final unless appealed from. Most of the cases cited are of sales in foreclosure suits. It Groff v. Jones, which related to a sale under execution in a-common-law action, Judge Sutherland said it was not necessary to send the parties applying for re-sale-to a court of equity. He did not say that it was improper to ask relief there. But in Lansing v. Quakenbush (5 Cow. 38), the supreme court held that a court of equity was the more proper forum in which to-obtain relief from a sale upon execution, at which the moving party was induced to buy by alleged false representation of the debtor. Tiernan v. Wilson (6 John. 411), was a case of a bill in chancery, asking to set aside a sale made under execution. Howell v. Baker (4 John. 119), sustained a bill to redeem on the ground that the defendant who was a purchaser at a sale under-execution was a trustee for the complainant. I therefore think that the relief sought by this plaintiff is the proper subject of an action.
The conveyance should be adjudged upon terms-In settling the form of the judgment, I would like to hear the parties as to the terms that should be imposed upon the plaintiff.
Judgment for plaintiff.