The American Insurance Company *vs.* Oakley
and others.

Where property is regularly advertised and fairly sold by a master, a sale will not be set aside, and a resale directed, for the benefit of parties interested in the proceeds of the sale, to protect them against the consequences of their own negligence, where they are adults and competent to protect their own rights on the sale.

And where the sale is in the usual manner, and the purchase is made by a stranger to the suit, mere inadequacy of price is not a sufficient ground for depriving the vendee of the benefit of his purchase, unless the inadequacy is so great as to be evidence of fraud or unfairness in the sale.

But the parties interested in the property to be sold, have a right to expect that it will be put up and sold in the usual manner, and in a way to produce a fair competition among the persons attending the sale to bid upon the property. And where the property has been sacrificed, by the neglect or mistake of the master to comply with the legal requirements on such sale, or by his having improperly put up for sale several lots together, which should have been sold separately, the parties injured are entitled to a resale; or to such other relief as can be given without doing injustice to a bona fide purchaser of the premises at the sale.

Where property consists of separate and disti. ct parcels which can be enjoyed by the owners thereof separately without diminishing their value, it is the duty of the officer who sells the same under a decree of the court to sell in parcels, except in very special cases.

The last clause of the 133th rule was only intended to provide for special cases; where it is evident that the several parcels of land, from their peculiar location in reference to each other, will be more valuable if owned by one person than if owned by different individuals in severalty; or where, in consequence of some prior incumbrance upon all the parcels, purchasers will not be likely to bid upon a portion only of the property, subject to such a general incumbrance.

This was an appeal by the Seneca County Bank from a decision of the vice chancellor of the first circuit, denying the appellants' application for a resale of premises which had been sold under a decree of foreclosure. The mortgaged premises originally belonged to the defendant Oakley, who mortgaged the same to the complainants to secure a loan of $18,000 with interest. The foreclosure suit was commenced in July, 1839, and a decree was obtained therein in April, 1841. Pending the suit the appellants, who were not parties to the bill, recovered a judgment of

1841.

American Ins.
Company
v.
Oakley.

about $12,000 against Oakley, which became a lien upon the mortgaged premises.   There were also other judgments against him, prior to that of the appellants, which were also liens.   And the premises having been sold under prior judgments, in February, 1840, the petitioners redeemed the premises from such sale, as subsequent judgment creditors, and thereby became entitled to the rights of the purchaser in the surplus moneys, upon the mortgage sale, after paying the complainants' debt and costs.

The premises consisted of two narrow lots of ground fronting on Water-street, in the city of New-York, with two houses thereon, and of a lot and storehouse in the rear of these lots, with an alley leading thereto from Water-street; and of two other lots, of greater width, with buildings thereon, upon Front-street.   And the whole were put up and sold together, by the master, and were struck off to the respondent C. V. S. Roosevelt, for $21,100 ; when, as the affidavits in support of the application stated, the premises were worth and would have brought $10,000 more if the same had been sold in parcels.   The appellants not being parties to the foreclosure suit, which was commenced before the recovery cf their judgment against the mortgagor, did not know of the existence of that suit, or that the premises were advertised by the master, until after the sale.   But as soon as they heard of the sale, and before the purchase money was paid, or the master's deed given, they caused an application to be made to the purchaser to relinquish his purchase, and offered to pay him his expenses and charges, and the interest upon the amount of his bid.   He declined the offer and stated that he had purchased as trustee and was not at liberty to relinquish the purchase.

O. *Meads*, for the appellants.

C. J. *De Witt* & J. *Blunt*, for the respondents.

THE CHANCELLOR.   The purchaser in this case unquestionably bought the premises in good faith, and is there-

fore entitled to be protected from loss if a resale is direct-
ed. And if the premises had been put up and sold in par- American Ins.
cels, I think it is not a case in which the court ought to Company
have interfered with the sale; although the property was v.
only sold for about two-thirds of its supposed value. This Oakley.
court does not usually interfere by directing a resale, for
the benefit of the parties interested in the proceeds of a
master's sale of real estate, to protect them against the
consequences of their own negligence, where they are
adults and perfectly competent to protect their own rights
on the sale. And if the property is duly advertised and
fairly sold by the master, in the usual manner, to a stranger
to the suit, mere inadequacy of price is not a sufficient
ground for depriving the vendee of the benefit of his pur-
chase; unless the inadequacy is so great as to be evidence
of fraud or unfairness in the sale.

In the present case it is true the appellants, or rather
their officers and agents, were ignorant of the decree of
foreclosure, or that any suit had been instituted to foreclose
the mortgage on the premises upon which they had obtain-
ed a lien subsequent to the filing of the complainants' bill.
And of course they were not aware that the premises had
been advertised for sale under such decree. But as the
usual notice of the pendency of the foreclosure suit had
been filed in the proper office two or three months before
the recovery of their judgment, they could, by proper dili-
gence, have ascertained not only the amount of prior liens
upon the property of their debtor, but also the proceedings
which were taking place to enforce those liens against his
real estate. Their ignorance of the fact that the property
was to be sold under the decree of foreclosure, and of the
time and place appointed for such sale, arose therefore from
their own negligence, or the negligence of their officers
and agents, and not from mistake or accident, against
which this court should be called upon to interfere, where
the sale was properly conducted.

Parties interested, however, even where they neglect
to attend the master's sale, have a right to expect, and

may reasonably presume, that the property will be put up and sold by the master in the usual manner; and in such a way as to produce a fair competition among those persons who do attend the sale for the purpose of bidding upon the property. And where it appears that the property has been sacrificed, by the neglect or mistake of the master to comply with the legal requirements on such sale, or by his having improperly put up various lots together, when they should have been sold separately to have produced a fair competition among the bidders, the parties injured thereby are entitled to relief, by a resale or otherwise, so far as relief can be given without doing positive injustice to bona fide purchasers of the premises at the sale.

In the case of *Woods* v. *Monell*, (1 *John. Ch. Rep.* 505,) Chancellor Kent held that where the premises to be sold consisted of several parcels, distinctly marked for separate and distinct enjoyment, it was, as a general rule, the duty of the officer who was to make the sale to sell in parcels, and not the whole premises in one entire sale. He says, to sell the parcels separately is the best for the interests of all the parties concerned. The property will produce more in that way, because it will accommodate a greater number of bidders, and tends to prevent obvious speculations upon the distresses of the debtor. In conformity with this principle, the revised statutes contain an express provision that upon sales of real estate upon execution, by the sheriff, where the property to be sold consists of several known lots, tracts, or parcels, such lots, tracts, or parcels shall be separately exposed for sale. (2 *R. S.* 369, § 38.) The 138th rule of this court requires the master to sell in the same manner, where real estate is to be sold under a decree in chancery, unless he is otherwise specially directed by the court. And the last clause of that rule, which authorizes him to sell in one parcel only, where he is satisfied that the property will produce a greater price if sold together, was only intended to provide for very special cases; where, from the peculiar situation of the different parcels with respect to each other, it is evident that the several parcels if

1841.

American Ins.
Company
v.
Oakley.

owned by one person, and kept together, will be much more valuable than the aggregate values of the several parcels could be to different individuals if owned by them in severalty ; or where, in consequence of some prior incumbrance upon the whole of the premises, purchasers would be unwilling to purchase only a portion of the property, subject to such incumbrance.

I have not been able to discover any thing in the situation of the property in the present case to render it necessary or proper to sell the whole of these lots and buildings together. The two lots upon Water-street were perhaps too narrow for the purpose of making two building lots. It might, therefore, have been a proper exercise of discretion, on the part of the master, to sell those two lots together in one parcel ; making a lot of twenty-eight feet front upon that street. But the two houses and lots on Front-street were in no way connected with these lots on Water-street. And each lot was of sufficient width either for a dwelling house or a store, and should therefore have been sold separately. And the storehouse and the lot on which it stands, together with the alley leading thereto from Water-street, should have been sold as another distinct parcel of the premises.

The affidavits annexed to the petition state the value of the property at $10,000 more than it was knocked down to the complainant for, as one entire bid for the whole ; and the belief of the deponents that it would have brought at least $30,000 if sold in separate parcels. The master undoubtedly acted upon the supposition that it was the wish of the mortgagor that the property should be sold together ; and as the solicitor for the complainants made no objection he put it up in that manner without sufficient examination. But it now turns out that the interest of the mortgagor in the equity of redemption had been sold on execution, and that the twelve months allowed to him to redeem had expired some time previous to the decree of foreclosure. He therefore had no interest in the sale, ex-

cept to have the property bring the amount of the mortgage and costs, so that he would not be personally liable for the deficiency. The rights of the appellants were probably seriously affected by this mistake of the master in putting up the property together, instead of selling it in parcels. For these reasons I think the vice chancellor should have directed a resale of the property, in parcels, making a proper provision for the indemnity of the former purchaser from loss.

The order appealed from must therefore be reversed. And as the appellants offer to bid $5000 more for the premises than they were before sold for; upon their depositing that sum with the master, within twenty days, to be applied to make up any deficiency, which may arise upon the resale, either in paying the amount due to the complainants for their debt and costs, or in paying and indemnifying the purchaser for all damages, costs, and expenses to which he may be entitled under this decision, the premises are to be resold, upon a notice of three weeks. And out of the money thus deposited with the master, the purchaser must be paid all his costs and expenses, including reasonable counsel fees for examining the title, to be taxed and allowed by the vice chancellor. He must also be paid the interest upon the deposit money paid to the master, which deposit is to be returned to him, and interest upon the residue of the purchase money while it has remained unproductive in his hands, and down to the time when he shall have notice that the $5000 is deposited with the master by the appellants. And the proceedings are to be remitted to the vice chancellor to carry into effect this decision.