### BILLINGTON *vs.* FORBES and MARSH.

Where a co-defendant of the mortgagor, in a foreclosure suit, took an uncon-scientious advantage of the illness of the latter which prevented him from attending the sale under the decree, in interfering to prevent a postpone-ment of the sale, and himself became the purchaser of the mortgaged prem-'ises at less than one third of their real value, the court ordered a resale; making provision in such order for the repayment to the purchaser of the full amount of his bid, with interest thereon.

THIS was an appeal by the defendant Marsh, from an December 5. order of the vice chancellor of the fifth circuit, directing a resale of mortgaged premises which belonged to Forbes the other defendant; and which had been purchased by Marsh at a master's sale under a decree of foreclosure.

*J. Ruger,* for the appellant.

*R. W. Peckham,* for the respondent.

THE CHANCELLOR. I think the vice chancellor was right in ordering a resale under the peculiar circumstances of this case. Very little reliance can be placed upon the re-collections of Billington; as his affidavits, which the ap-pellant and the respondents repectively have obtained from him, are in direct conflict in some very important particu-lars. I think the following facts may be considered, how-ever, as established. *First,* that Marsh, the purchaser, was a mere nominal defendant, who had no interest in the mort-gaged premises, nor in the proceeds of the sale, which justified him in interfering to persuade the complainant to withdraw his consent to the postponement of the sale for a week, upon the terms proposed. And I think, from the interview which took place between him and the complain-ant, the day previous to the sale, that he must then have been apprised of the fact of the sickness of the defendant Forbes; although he is careful to say, in his affidavit, that he heard nothing of his sickness on the day of sale, and

did not hear it urged as a reason for the postponement. This denial that he heard of Forbes' sickness on that day was no answer to the affidavit on the other side, which had been served on his solicitor, that when Marsh interfered to prevent the postponement of the sale he had been fully informed of the sickness of Forbes. *Secondly*, that a sudden and severe illness had prevented Forbes from raising the money to pay the decree, or from attending the sale to see that the property was sold for something near its real value ; which value, from the affidavits, must have been from one thousand to fifteen hundred dollars, to any one who wished to purchase such a farm. *Thirdly*, that Billington was willing and would have consented to a postponement, upon the terms proposed by Near and Sweet, who had been sent by Forbes to ask for an adjournment for a week, if Marsh and others had not interfered to prevent the exercise of the natural feelings of humanity which had induced Billington to consent to such postponement, before such interference took place. *Fourthly*, that Marsh, after he had thus improperly interfered and had succeeded in preventing an adjournment of the sale, himself became the purchaser of this sick man's property at about one-third or one-fourth of its real value. And he insisted upon retaining it, although the whole amount of his bid, and something extra for his trouble, was raised and tendered to him the second day after the sale ; the sabbath only having intervened.

Upon this state of facts I think the appellant took an unconscientious advantage of the situation in which the respondent was placed, by a dispensation of Providence, to obtain this property much below its real cash value. The decision of the vice chancellor, therefore, is not in conflict with the general rule of the court, that mere inadequacy of price is not of itself sufficient to deprive a bona fide purchaser at a master's sale of the benefit of his purchase. (*Livingston* v. *Byrne*, 11 *John. Rep.* 555. *Duncan* v. *Dodd*, 2 *Paige's Rep.* 101.) And on the grounds upon which the decision in this case was placed by the vice

chancellor the appellant was not entitled to costs for opposing the application.

The order for a resale, however, should have contained some further provisions to ensure the re-payment to the appellant, of the money which he had paid to the complainant upon the former sale, in case the respondent should neglect to pay that amount, with the interest thereon, within a limited time after the entering of such order. Such a provision would have been inserted in the order as a matter of course, upon the mere suggestion of its propriety, to the vice chancellor, by the counsel of Marsh. A modification of the order in this respect, therefore, will afford no ground for refusing costs to the respondent upon this appeal ; as it does not affect the merits of the case brought before me for a decision.

The order appealed from must be affirmed with costs, with the following modification : The order must contain a provision that if the respondent does not pay or tender to the appellant, or to his solicitor, the $360 and interest thereon from the 24th of June, 1843, within ten days after the service of a copy of the order to be entered on this appeal, the master shall immediately proceed to a resale of the premises, upon a three weeks' notice ; that he put up the premises at the sum of $360, and interest as aforesaid, and the master's fees and expenses ; and that if no one bids to that amount, and pays the purchase money to that extent in cash, at the time the premises are so put up and offered for sale by the master, then that the former sale to the appellant be ratified and confirmed.

Order accordingly.