Paige, J.
The counsel for the plaintiff makes the following points : 1. The proceedings on the sale were irregular ; 2, There was a combination between the purchasers and the other parties to the suit to prevent bidding; 3. There was a corrupt agree- *171 meat between them, that the purchasers should have one half of their bid over $8000; 4. The sale of the tannery was void, because the purchase was made by the guardian ad litem of the infant defendants, for the benefit of Smith <fc Croe; 5. The plaintiff’s illness, with the inadequacy of the price, is a sufficient reason for a resale.
The irregularity in the proceedings in respect to the sale complained of, relates principally to the advertisement of the sale, and to the notices of the postponement of such sale. I am inclined to believe that the Fulton County Democrat was a newspaper of the county of Fulton, within the meaning of the revised statutes, (2 R. S. 369,) although the press work of the new matter, and the striking off of the paper, was done in the county of Schenectady. But, however this may be, the notice of the sale was regularly printed and published in another newspaper, which was both printed and published in the county of Fulton; in which county the tannery in question was situated. The notices of postponement were also published in the same papers. The same objection is made to the publication in the Hamilton County Sentinel, as to the publication in the Fulton County Democrat. A part of the lands sold lie in the county of Hamilton. But I think it unnecessary to dispose of the questions presented in relation to the regularity of the notices of the sale and of its postponement. The plaintiff, Lefevre, is not at liberty to take any objection founded on irregularity in the publication and posting of these notices, or on the omission of the referee to give such notices. The title of the revised statutes in relation to executions, &c. (2 72. /S'. 370, $ 40,) provides that the omission of the sheriff to give notice of sale under an execution shall not affect the validity of any sale made to a purchaser in good faith, without notice of any such omission. I think that this section should apply to sales under a judgment in partition. Section 56 of the title in relation to the partition of lands, requires that the notice of sale shall be for the same time and in the same manner as is required on sales of real estate by sheriffs on execution. (2 72. S. 326.) It is apparent from this section, taken in connection with the other *172 sections of that title, that all the provisions of the title in relation to the notice of sales by sheriffs on execution, are made applicable to sales of lands under a judgment in partition. {See §§ 61, 79, 80, 81, 2 R. S. 426, 330.) If this be a correct conclusion, then, if the referee in this case had omitted altogether to give a notice of sale, the sale to the purchasers would not have been invalid ; if made in good faith without notice of any such omission. If an entire omission to give notice of the sale would not invalidate the sale, certainly a defective and irregular notice could not have this effect. There is no evidence in the case showing that any of the purchasers had notice of any irregularity in the notice of sale, or of any omission of the referee to give such notice, or to give notice of its postponement. The provision that the notice of sale of lands, in partition, shall be for the same time and in the same manner as is required on sales by sheriffs on execution, necessarily implies that in every case where an omission to give notice of sale, or an irregular notice, will not invalidate a sale by a sheriff on execution, a like omission to give notice of sale, or a like irregular notice, will not affect the validity of a sale of lands in partition. It seems also that the provisions in the title relative to the partition of lands, in respect to conveyances by commissioners, or a master in' chancery, will cure, any defect or irregularity in the notice of sale. These provisions declare that such conveyances shall be a bar, both in law and equity, against all persons interested in the premises, who are parties to the proceedings. There is also force in the proposition, that the plaintiff, from his connection with the proceedings, his agency in the publication of the notice of sale, and in the publication and posting of the notices of postponement, his bidding at the sale, and his participation in fixing the terms of sale, ought not to be permitted now to object to the validity of the sales, on the ground of irregularity in the notice of the sale, or in the notice of its postponement. The affidavits do not sustain the allegations of a combination to prevent bidding, and of an agreement that Smith & Croe should be entitled to one half of any bid made by them, above $8000.
*173 The remaining points of the plaintiff, to be considered, are: that the sale of the tannery is void, because the purchase was made by the guardian ad litem of the infant owners ; and that the illness of the plaintiff, Isaac Lefevre, on the day of the sale, in connection with the inadequacy of the price for which the tannery, &c. was sold, are a sufficient reason for ordering a resale. °
Under the practice of the English court of chancery, as a general rule, the biddings will be opened, and a resale ordered, where, before the confirmation of the sale, an offer is made of an advance of 10 per cent on the bid and an indemnity to the purchaser. (1 Sim. & Stu. 20. 13 Wend. 226.) But a resale will not be ordered where the advance offered is less than 40Z. (4 Mad. Ch. Rep. 460. 2 Paige, 100.) The English practice, however, has not been adopted in this state. Here, neither before nor after the confirmation of the report of the sale, will a resale be ordered, upon an offer of an increase of price, alone. (13 Wend. 226. 26 id. 143. 9 Paige, 259. 10 id. 244.) This rule also prevails in England, after the report of the sale is confirmed. In this state, special circumstances must in all cases exist, where the sale is not void, to justify an order for a resale. A resale will be ordered where there has been fraud, or misconduct, in the purchaser; fraudulent negligence or misconduct in any other person connected with the sale ; surprise or misapprehension, created by the conduct of the purchaser, or of some person interested in the sale, or of the officer who conducts the sale. (13 Wend. 227. 26 id. 143. 10 Paige, 243. 3 John. Ch. 296. White v. Wilson, 14 Ves. 151. Morice v. Bishop of Durham, 11 Ves. 57.) In Lansing v. McPherson, (3 John. Ch. 424,) Chancellor Kent opened a sale. on the ground of the ignorance of the defendant, that the plaintiff had obtained a decree against him for the deficiency of the money to arise from the sale of mortgaged premises, to pay the mortgage debt, in connection with the defendant’s offer of an advance of 50 per cent on the previous bid. In that case the plaintiff was the purchaser, and the sale had not been confirmed, nor the deed executed. In May v. May, (11 Paige, 201,) an irregular *174 sale of mortgaged premises, whereby the property was sacrificed to the prejudice of a judgment creditor, was set aside on the application of such creditor, and a resale ordered, and the purchaser was denied the costs of opposing the application for a resale. In The American Insurance Co. v. Oakley, (9 Paige, 259,) a resale was ordered where the master improperly put up for sale several lots together, which should have been sold separately, whereby a judgment creditor had been injured. But in this case, as the purchaser purchased in good faith, his costs, expenses and damages were directed to be paid. In Brown v. Frost, (10 Paige, 244,) it was held that a resale would be ordered on the application of an owner of the equity of redemption, where he had intended "to bid a greater sum for the mortgaged premises than the price for which they were struck off, but was prevented from so doing by mistake or accident. In Billington v. Forbes, (10 Paige, 487,) the sale was opened on the application of a mortgagor, where an unconscientious advantage had been taken of his illness, by a co-defendant, which prevented him from attending the sale, and such co-defendant had, at the sale, purchased the premises at less than one third of their value. Infant owners will be relieved, by a resale, where their property has been sacrificed at the sale, through the misapprehension or negligence of their natural or statutory guardians, on condition that a full indemnity is offered to the purchaser. Belief is accorded to infants, on account of their infancy, where it would be denied to adults. A sale of the property of adults will not be disturbed when it has been sacrificed in consequence of their own negligence or inattention. (Duncan v. Dodd, 2 Paige, 101.)
If the plaintiff in this case was, at the time of the sale, laboring under such a high nervous excitement as to unfit him for business, and if he had previously intended to bid for the tannery and premises connected with it, the sum of $9000, and had been actually prevented from so doing, by his illness at the time of the sale, he would have been entitled to a resale on offering an advance of $2000 on the former bid, and full indemnity to the purchasers. But it is unnecessary to consider *175 whether he is entitled to a resale upon this ground ; as I have come to the conclusion that a resale must be ordered upon other grounds. The circumstances in the case, of the infancy of some of the owners of the tannery, and that the tannery, &e. sold for a sum greatly below its value; in connection with the omission of the guardian ad litem of such owners to bid for Smith & Croe at least the sum of $8000, which he was authorized by them to do, and the offer of Lefevre of an advance of $2000 on the former bid, alone will justify me in ordering a resale, for the benefit of such infant owners. Although no application for a resale is made to the court in their behalf, yet such an order can be made on the court’s own motion, in its capacity of universal guardian to all infants, and by virtue of its obligation to exercise a general superintendence and protective jurisdiction over their persons and property. (2 Story's Eq. Jur. §§ 1384, 1337.) Wherever, therefore, in a suit or proceeding in this court, the fact appears that the rights of infant parties have been invaded, or are in danger of being prejudiced, the court ought, without waiting to be specially invoked to do so, to exercise its protective jurisdiction in behalf of such infant parties.
I think, also, that a resale of the tannery and the premises connected with it must be ordered, because they were purchased by the guardian ad litem of the infant defendants. Section 62 of the title of the revised statutes in relation to the partition of lands, declares that no guardian of any infant party to the suit shall purchase any lands, being the subject of the suit, except for the benefit or in behalf of such infant, and that all sales contrary to this provision shall be void. (2 R. S. 326, § 62.) The language of this provision embraces Mr. Wait. He was the guardian ad litem of the infant defendants, who are the heirs of one of the owners of the tannery and lands connected therewith, being the subject of the suit; and he did not purchase these premises for the benefit, or in behalf of such infant defendants. It will be observed, that under the statute no purchase by the guardian can be valid, unless it is made for the benefit or in behalf of the infant. I do not therefore see how the purchase in question can escape the condemnation of the *176 statute. It comes within its words, and I think also within its spirit and policy. It is no answer to the objection, that the purchase was not made by the guardian for his own benefit. The object of the statute was to secure, in behalf of the infant, the best judgment, skill and exertions "of his guardian. There can be no certainty of accomplishing this end, if the guardian is permitted to purchase either for himself or a third person. It would be alike hazardous to the infant, although perhaps not in equal degree, whether the guardian was allowed to purchase for himself or a third person. In either case the infant could not expect to receive what the law intends he shall have, an exclusive devotion to his interests, from his guardian. It is for this reason that the law declares, without any previous investigation, that a purchase by a trustee, of the trust property for his own benefit, is absolutely void. (1 iSelden, 256.) A guardian or trustee cannot place himself in a position in which he may be compelled to disregard either the interest of his ward, or cestui que trust, or his own interest or that of some third person. Mr. Wait, by assuming the agency of Smith & Croe, placed himself in such a position. As agent of Smith <fc Croe, it was his duty to purchase the property for the lowest possible price ; as guardian, it was his duty to cause it to be sold for the highest possible price. This is a position the law did not permit Mr. Wait to occupy, and it is one intended to be forbidden by the statute. It is argued by the counsel for Smith & Croe, &c. that Lefevre is not at liberty to take this objection to the sale; and that it can only be taken on a proper application by the party injured. I concede that Lefevre cannot apply for a resale upon this ground; which affects only the present defendants. But I do not concede that the court has not the power, or that it is not its duty, without any application by an infant party, to interpose in his behalf to prevent a sacrifice of his property. As the fact of the purchase by the guardian, for the benefit of Smith &• Croe, at a price injurious to the interests of the infant defendants, has, by the motion of Lefevre, been brought to the knowledge of the court, I am satisfied that it is-my duty, without awaiting an application in behalf of such *177 infants, to order a resale of the tannery for their benefit, upon such terms and conditions as will secure to them the full value of their interest in such property. Undoubtedly in all cases of illegal purchases of an infant’s property by his guardian, the court can ratify the sale, if, in its judgment, a ratification will promote the interests of the infant. In this case it is clear, that upon the offer of Lefevre, a resale will be beneficial to the infant defendants. I shall therefore order a resale of the tannery and the land immediately connected therewith, the same as purchased for Smith & Croe; provided Lefevre, within eight days, executes a bond with sufficient surety to the other owners, conditioned that he will on the resale bid $9000, and will purchase the tannery at that price, if struck off to him, and will also, in case he becomes the purchaser, allow and pay to the other owners at the rate of $2.75 a cord for their share of the bark at such tannery, and will in all respects fulfill the terms on which said tannery and premises shall be sold to him, &e. Smith <fc Croe must be allowed interest upon the first payment of their purchase, from the time they provided the money for that purpose, and while it remained unproductive in their hands; but they are not entitled to costs of opposing the motion, or to the payment of their expenses and damages, as the purchase by Mr. Wait for them was void, under the statute. The resale may be on a previous notice of three weeks, in case the parties interested in the premises consent thereto in writing. If Lefevre fails to give the security required, the sale to Smith & Croe must be deemed to stand for the benefit of the infants, and must be ratified; as an order directing a resale, without such security, might prove injurious instead of being beneficial to such infants.
I see no reason for disturbing the sale of the other parcels of the real estate, sold to Caleb W. Slocum and others. The advance offered on the bids for these parcels, is not sufficient to justify such an order. The motion as to these sales must therefore be denied. As Slocum and Van Housen did not oppose the motion, they are not entitled to costs, But the motion, as to Arnold, must be denied, with $10 costs. The decision *178 does not apply to the purchase by William I. Powers & Co., as the parties a greed, on the hearing of the motion, that the motion should not embrace that purchase. Although it is apparent from the affidavits read on the motion, and the offer of Lefevre to bid $9000 for the tannery, <fcc. that this property was sold at least $2000 below its value, yet I entertain no doubt that the guardian, in entering into the arrangement made with Smith <fc Croe, that they should become purchasers, acted in good faith, and believed that he' was by such arrangement promoting the interests of the infant defendants, and that he would thereby prevent a ruinous sacrifice of their interest in the property.
[Fulton Special Term,
June 10, 1856.
Paige, Justice.]