## THE MERCHANTS' INSURANCE COMPANY OF THE CITY OF NEW YORK a. HINMAN.

*Supreme Court, Second District; Special Term, November, 1856.*

REAL ESTATE.—RE-SALE.

Under what circumstances and upon what terms a re-sale of property sold at a judicial sale will be ordered.*

Application on behalf of infant defendants, to set aside a sale of mortgaged premises, and for a re-sale.

The action was brought against Richard H. Hinman and his wife, and others, to foreclose a mortgage given to the plaintiffs by Thomas Lewis and wife, dated June 20, 1850, to secure the payment of $19,800 in one year from date. The mortgagor, Thomas Lewis, had since deceased, and his infant children were made defendants, being entitled to the surplus, if any, and their estate being liable for the deficiency, if any, arising on the sale. The usual judgment of foreclosure and sale was obtained on June 16, 1856; the amount of the debt, interest and costs being $21,093 28. Under that judgment, the premises were sold on July 12, 1856, and were bid in by Mr. Ostrander, the president of the plaintiffs, and in their behalf, for the sum of $10,000; that bid being the only one made. The sheriff's deed had been executed to Ostrander, and he now held the premises for the benefit of the plaintiffs : who claimed a deficiency of $12,165 64 against the estate of the deceased mortgagor. The mortgaged property consisted of eleven brick dwellings in the city of Brooklyn.

On the part of the defendants, it was alleged, that the houses were worth at least $24,000, and that they were at the time of sale yielding annual rents amounting to upwards of $3,000. And this statement was wholly uncontradicted. The guardian of the infants made affidavit that he had no knowledge or information of the judgment or sale until some time

---

* Compare also Lentz a. Craig, (2 *Ante*, 294) ; King a. Morris, (2 *Ante*, 296.)

after the sale had taken place. And in case a re-sale was ordered, he offered an advance of ten per cent., and stipulated to indemnify the purchaser for all expenses incurred by him. It clearly appeared that all the eleven houses were put up and sold in one parcel.

On the part of the plaintiffs, it was shown that the guardian was served with papers in the suit at its commencement, and knew of its institution ;—that he did not appear in the action ;—that he was informed on July 15 that the sale had taken place ;—that the plaintiffs held another bond and mortgage, given by Thomas Lewis, deceased, which was then in process of foreclosure ;—that negotiations were at once entered into between the guardian and the plaintiffs in reference to the two mortgages, with a view to giving up the present sale, or conveying the premises to defendants, on receiving payment of the debt in this action, and security for the payment of the debt in the other ;—but those negotiations had not resulted in any actual arrangement.

Immediately after the sale the plaintiffs paid $635 34, for taxes on the mortgaged premises, and $326 98, costs and expenses of the suit and sale.

*R. Emmett*, for defendants.

*Hopper & Howland*, for plaintiffs.

BIRDSEYE, J.—It, most clearly appears here that the infants, who are the parties interested in the proceeds of this sale, must, if it is allowed to stand, suffer very severely by the default of others. Their property, worth at least twenty-four thousand dollars, has been bought for ten thousand dollars. It was amply sufficient to have paid the whole mortgage debt, with all costs and expenses. As sold, there is a deficiency of upwards of twelve thousand dollars, or more than half the value of the premises, which will be a lien on their other property.

It is true that one circumstance, upon which some stress was laid in Duncan v. Dodd, (2 *Paige*, 101,) is not shown to exist here. The property in that case was the sole dependence of the infant. In this case, there is no proof on that subject,

nor any means of judging what property they have, if any, except from the plaintiffs' own statement, that they had another mortgage against other property belonging to the estate of the infants' father.

But I do not deem this consideration a controlling one. The mortgagee is entitled to the full payment of his loan. If he receives that, he should be content. When he bids in the property upon a sale, it is for the purpose of paying his debt. And so long as the property remains, as here, in the hands of the plaintiff, not having been struck off to a third person, as in Duncan v. Dodd, or since conveyed to a stranger, as in Tripp v. Cook, (26 *Wend.*, 143,) I can see no objection, but rather every reason, for interfering to prevent so enormous a sacrifice.

In Lansing v. McPherson, (3 *Johns. Ch. R.*, 424,) the premises were bid off by the plaintiff for half their value. And an adult defendant, regularly served with process in the case, and who suffered default, was let in to have a re-sale, on the mere ground of his interest in the proceeds and his liability for the deficiency. Within the cases of Lansing v. McPherson, Duncan v. Dodd, and Tripp v. Cook, I think the infants are entitled to the relief sought here. Nor is it necessary to turn them over to an action against their guardian to recover the amount of the loss on this sale, as damages for his neglect of their interests. That remedy is too distant and uncertain to form an answer to the present application, where the power to grant relief adequate to the rights and equities of all the parties seems clear.

But there is another ground on which this sale must be set aside. The rules of the court require that where mortgaged premises directed to be sold, consist of several distinct lots or parcels, which can be sold separately, without diminishing their value on such sale, the sheriff or other person conducting the sale, shall sell them in separate lots or parcels, unless otherwise specially directed by the court. Parties interested in the sale, even when they neglect to attend it, have a right to expect, and may reasonably presume, that the property will be put up and sold by the sheriff or referee in the usual manner, and in such a way as to produce a fair competition among those per-

sons who do attend the sale for the purpose of bidding upon the property. And where it appears that the property has been sacrificed, by the neglect of the sheriff or referee to comply with the legal requirements on such sale, or by his having improperly put up various lots together, when they should have been sold separately to have produced a fair competition among the bidders, the parties injured thereby are entitled to relief, by a re-sale or otherwise, so far as relief can be given without doing positive injustice to *bona fide* purchasers of the premises at the sale. (American Insurance Company *v.* Oakley, 9 *Paige*, 261.)

In this case there were eleven dwellings, put up and sold together in a single parcel. Their fair value was at least twenty-four thousand dollars, when taken together. Very few purchasers would attend such a sale, who were either desirous or prepared to purchase property of that amount and value. And there might have been many in attendance who would have purchased single dwellings at fair prices, so as to have prevented any sacrifice. The plaintiff in a case like the present has very great advantages in being able, to a considerable extent, to prescribe the terms of sale, and also to use his mortgage debt as a cash fund for the payment of his bid. It needs only that he be allowed to disregard the rule as to selling in proper parcels, and to put up the property in such a manner as to discourage competition, and he has in most cases the means of buying in the property at his own prices.

The sale must be set aside, and the property must be re-sold upon the usual notice, upon the guardian depositing with the sheriff the sum of twelve hundred and fifty dollars, to be applied, together with such rents as the plaintiff may have received from the mortgaged premises, in indemnifying the plaintiffs for the sums paid for taxes and assessments with interests thereon, and for the costs and expenses of opposing this motion and of the re-sale.