## SUPREME COURT.

CHARLES M. WOLCOTT agt. CAROLINE SCHENCK and others.

In an action for the *foreclosure and sale of mortgaged premises*, where the mortgaged premises consisted, at the time of the mortgage, as well as at the time of the sale, of *several parcels* distinctly marked by separate use, it is the *duty* of the officer conducting the sale, to sell them *separately*, unless in the very special case intended to be provided for in the last clause of the 74th rule of this court.

And where the referee has been requested to conduct the sale in such a manner and declined to do so, it is a sufficient reason for *ordering a re-sale*, unless it be shown that the case comes clearly within the aforesaid exception. The presumption is, that a sale in parcels will be most advantageous, and the contrary must be made to appear to sustain a sale in bulk in such a case.

*Dutchess Special Term, February,* 1862.

MOTION to set aside a sale, and for a re-sale of mortgaged premises.

Mr. MONELL, *for plaintiff.*

Mr. —— ——, *for defendants.*

EMOTT, Justice. I find nothing in these affidavits to sustain the imputation of bad faith to the plaintiff, or the charge of wilful misconduct against the referee. The question is simply one of regularity and conformity to the rules of the court, and the principles which govern its procedure. The parties to a foreclosure suit, and especially those interested in the equity of redemption as owners or subsequent incumbrancers, have a right to insist that the property shall be sold in the manner and according to the rules established and adhered to by the court, as most likely to produce the largest amount, and thus at once to satisfy the plaintiff and protect those whose interests are subject to his claims. The court of appeals, in a very recent case, (*The Buffalo Savings Bank* agt. *Newton,* 23 *N. Y. R.,*) while striking at the appealability of orders granting or refusing re-sales, or regulating the proceedings at sales upon judgments, nevertheless distinctly admit that

the rights of parties which are affected by these orders are substantial rights.

The property included in this mortgage consists now, and consisted at the date of the mortgage, of separate and distinct parcels. Besides the parcel known as the Clay Mill property, which lies at a distance of half a mile from the main portion of the premises, the residue is divided into three parcels which do not even adjoin each other, and which were thus separated by roads or by intervening lands, at the time of the execution of the mortgage. The factories occupied by the Seamless Garment Company constitute one distinct parcel on the east side of the road to Fishkill village, while on the west side there is a vacant lot on the corner of the road to Fishkill Landing, another on the south side of North street, separated from the former by intervening land, and from all the rest of the mortgaged premises by the roads, and on the north side of North street another parcel separate from all the others, and which is itself again subdivided into at least nine lots with distinct houses or buildings upon them. This is the condition of the property now, and was its condition at the date of the mortgage.

In the mortgage, the Clay Mill property is described separately as one parcel, and all the residue is included in another description, including, of course, the roads which cross and divide it, subject to the rights of the public in these roads, and excepting certain parcels which had been conveyed previous to the mortgage out of the body of land included within the original boundaries given. This description of the mortgaged premises was probably adopted as matter of convenience, to save the necessity of making new surveys and new boundaries as to portions of the lands which had been sold and conveyed by the mortgagor.

At the time of the sale the referee was requested by the attorney for some of the defendants, to sell the premises in parcels, but declined to comply with the request, although

it was coupled with an offer that if the premises did not thus bring sufficient to satisfy the mortgage, they might be re-sold together.

It is contended that the mortgagor made a contract by his mortgage, that the whole property should be sold if the debt was not paid, and that the court have no power to interfere with that contract. A little reflection will show that there is no such contract. The mortgagor by his mortgage, it is true, subjected the whole property to the lien of the mortgage, leaving in himself only an equity or right to redeem. This suit is a proceeding authorized by law and the practice of the courts, to foreclose or extinguish that equity, and this is done according to that practice, by a public sale. But neither this sale nor the manner of conducting it are regulated by the contract, nor has the mortgagee a right to anything more than the application of so much of the property as is necessary to the satisfaction of his debt, as, by selling a part of the property mortgaged, if it consist of distinct parts, and less than the whole will suffice to his satisfaction.

It was also urged upon the argument of this motion, that it should not be entertained at all, because it was not accompanied by an offer to bid upon a re-sale a larger sum than the property brought at the present sale. This might be so, if the application were made solely upon the ground of an inadequacy of price, and no complaint were made of the conduct of the sale. It is not, however, a fatal objection to the motion.

The 74th rule of this court requires its officers, conducting sales of real estate, when mortgaged premises consist of several distinct lots or parcels which can be sold separately without diminishing their value, to sell the same in separate lots or parcels, unless otherwise specially directed. But if the officer is satisfied that the property will produce a greater price if sold together, than it will in separate lots or parcels, he may sell it together, unless otherwise

directed in the order of sale.   The 138th rule of the court
of chancery, of which this is a transcript, received a con-
struction in the case of *The Amer. Ins. Co.* agt. *Oakley*, (9
*Paige*, 259.)   The chancellor said, in that case, that the
last clause of that rule, authorizing a sale of all the real
estate in one parcel, notwithstanding its division, was
intended to provide for any special cases, some of which
he suggests.   But the general rule is the other way, and it
is based upon experience and judgment, as most likely to
promote the interests of the parties and prevent specula-
lations upon the distresses of debtors.   It may be presumed
always, that property which is divided into parcels will
produce more if sold separately, than if put up together,
especially when the amount or value of the whole is very
large.

The statute regulating the foreclosure of mortgages by
advertisement, contains a provision based upon this prin-
ciple.   Section 6 of title 20, chapter 8, part 3 of the Re-
vised Statutes is to the effect, that if the mortgaged pre-
mises consist of distinct farms, tracts or lots, they shall be
sold separately, and no more farms, tracts or lots shall be
sold than shall be necessary to satisfy the amount due on
the mortgage, with costs, &c.   In the case of *Lamerson* agt.
*Marvin*, (8 *Barb.*, 9,) it was held that a sale under this
statute, otherwise regular, was not void because the whole
mortgaged premises were sold together, although subse-
quent to the mortgage they had been subdivided and por-
tions of them sold to different purchasers.  ·  It is perfectly
obvious, as Judge ALLEN states in this case, that if the pro-
ceeding to foreclose had been in a court of equity, or if the
subsequent purchasers had invoked the aid of a court of
equity, such a sale as had then taken place would not have
been permitted.   But the question, whether parties who
had neglected thus to protect their rights could subse-
quently avoid the whole sale, was a different one.   The
absolute validity of the sale was a strict legal question,

while the rights of these parties were purely equitable, obviously requiring equitable remedies. The case is not an authority where the question is not whether the sale is void, but whether it is inequitable that it should stand, and where the whole matter is completely within the control of the court. Especially is this so, when, as in the present instance, the parties who now complain made their objection at the time, and insisted that the sale should be made in the manner which they considered just and advantageous. In short, the question here is an equitable and not a legal one, and therefore the case to which I have been referring is not an authority.

But there is another reason why the opinion of Judge ALLEN is not controlling on this application. It will be seen, by an examination of the case before the learned judge, that the property mortgaged was not only described as one parcel in the mortgage, but was in fact but one parcel when the mortgage was made. All that was decided by Judge ALLEN was, that where a single entire parcel of land is mortgaged as such, although the mortgagor subsequently sells portions, and thus subdivides it, a sale of the whole together, by proceedings under the statute, by virtue of the power of sale in the mortgage, is not void, but the remedy of the purchasers is in equity, and of course should have been resorted to before the sale. It is true, Judge ALLEN speaks of these provisions of the statute as applicable to mortgages upon premises not only consisting at the time of the mortgage of distinct lots, but described in the mortgage as such. But these observations, so far as they state a rule for a case where the premises, though described in the mortgage as a single parcel, consisted in fact of distinct lots, are remarks upon a question not presented by the case before him, and the rule indicated does not follow necessarily from the principle decided in the case, although the observations were made not unnaturally in the course of the argument. The present case is distin-

guishable from *Lamerson* agt. *Marvin*, not only by the fact that this is a proceeding in a court of equity, and that was a suit at law, but also by the fact that here the property was divided into distinct parcels, and consisted of such parcels at the time of the mortgage, while there the premises at the time of the mortgage was an undivided farm, and the subdivision was by sales to subsequent purchasers who had acquired equities only against the mortgage, and had neglected to enforce them.

The same observations may be made upon the case of *Hyland* agt. *Stafford*, (10 *Barb.*, 557–564,) and it will also be found that there the court expressly declined to pass upon any such questions. I may add, that the statute regulating sales by execution contains a similar provision, (2 *R. S.*, 369, § 40,) and in the case of sales under judgments it must of course be the condition of the property in fact, and not any description of it, which is to control the mode of conducting the sale. The rule was laid down for chancery sales, by Ch. J. KENT, in the early case of *Woods* agt. *Monell*, (1 *J. C.*, 505,) citing the analogy of this statute; and it is not an unreasonable inference that the same analogy has been followed in the regulation by rule of court, and otherwise, of all judicial sales. I think when the question is presented, it will be held that it is the actual condition of the property, and not its description in the mortgage, which is material. Of course it is not intended to express any opinion here as to whether a violation of the rules which have been adverted to, render a sale void or voidable, or simply irregular.

There is another case which seems at first consideration more nearly in point here, and which requires some remark. That is the case of *Griswold* agt. *Fowler*, (24 *Barb.*, 135.) This was a foreclosure in equity, and an order of the special term refusing to direct a sale of the property in parcels, was affirmed, although it had been laid out into lots by the mortgagor, and a map made. It is necessary in this case

also, however, to look carefully for the precise point involved in the decision. It will be found that here again the premises were a single tract of land when they were mortgaged. Afterwards the mortgagor, for speculative purposes, caused them to be surveyed into streets and lots, an in effect made a city upon paper. The controlling consideration with the court was, that a sale of the various lots into which the mortgagor had subdivided the property, would not in fact be a sale of the whole property. No inconsiderable portion of it was occupied by the streets which had been laid out, and the whole value of this would be lost by such a sale as was asked for. The plaintiff had offered to consent to a sale in lots, if he could be secured against a deficiency in consequence of the loss of the land covered by the streets, and of a sale of town lots when there was in fact no town, and no demand for small lots of land. The whole subdivision of the property was on paper, there was no occupation by it; and although some of the lots had been sold, none of the purchasers thought their interests worth protecting. The observations of Judge BIRDSEYE, in his opinion that the contract of the parties included the whole of the land, were pertinent in that case, because such a sale as the defendants insisted upon would in effect have deprived the mortgagee of a portion of the land mortgaged for his security, on the ground of a mere paper dedication to the public.

It is unnecessary to determine here whether, when premises mortgaged in one parcel, and being such at the time of the mortgage, were distinctly subdivided and occupied separately before foreclosure, these rules as to their sales are applicable. It is sufficient at present to say, that when the mortgaged premises consisted, at the time of the mortgage, as well as at the time of the sale, of several parcels distinctly marked by separate use, it is the duty of an officer of this court conducting a sale, to sell them separately, unless in the very special cases intended to be pro-

vided for in the last clause of the 74th rule. And where the referee has been requested to conduct the sale in such a manner, and declined to do so, it is a sufficient reason for ordering a re-sale, unless it be shown that the case comes clearly within that exception. The presumption is, that a sale in parcels will be most advantageous, and the contrary must be made to appear to sustain a sale in bulk in such a case.

In the present instance, the opinions of the various persons who have made affidavits vary materially, as might be expected, both as to the value of the property and the probable result of a re-sale in parcels. If the case stood upon a question of inadequacy of price merely, to be determined upon estimates of value, probably I should hardly feel justified in ordering a re-sale. Still, the preponderance of evidence is, that more would be realized upon a re-sale than was obtained at the present sale. The presumption of the law and the judgment of experience lead to the same conclusion, and, as I have said, to except the case from the rule, these must be overthrown by proof.

The plaintiff, who was the purchaser at the sale, contends that the Clay Mill property and the factory property should be sold together, on account of the importance of the control of the water privilege at the former, to the owners of the latter. But this goes to prove that there would be more competition for the mill property, and not that purchasers would refuse to bid upon the factory merely on account of the risk of competition for the former. It is the interests of the owner of the equity of redemption, and not those of purchasers of the factory, which are to be considered. The case is still plainer as to the other parcels, the houses and the land, for they are not even as important to the use of the factory as the upper water privilege. I am far from convinced that the value of the whole together would be greater than the aggregate values of the several parcels to separate owners.

There is nothing in the objection that the parcels are not described separately in the advertisement. They could have been easily described separately by the referee, and accurate or exact boundaries subsequently inserted in deeds.

The property was purchased by the plaintiff and has been re-sold by him. But his vendees bought before the referee's sale had been confirmed, and both he and they took a title subject to the control of the court. They are not entitled to special protection.

The sale made a surplus, in which judgment creditors would have rights or interests. But it is to be remembered that the sale was not made for their benefit, or to provide for their payment. Upon a re-sale in parcels, as soon as the amount of the mortgage is realized, the judgment of sale will be spent, and no more of the property can be sold. The subsequent incumbrances will then fall upon the remaining lands relieved of the prior lien of this mortgage. I shall direct that a re-sale take place in parcels, the factory property to be sold first, and the Clay Mill next, and the residue of the property, if necessary, afterwards, in such order as the referee shall determine.

The re-sale will be made by the same referee. Either party may apply to the court for further instructions as to terms, &c. No costs are allowed on this motion.