MORRIS STEINHARDT, Respondent, *v.* EDWARD
CUNNINGHAM, Appellant.

55 375
130a 292

*Will — when a trust is attached to the executorial office — a deceased trustee represented by the survivor — an acceptance of the proceeds of a judicial sale estops a party from setting up its invalidity — selling more property than is necessary to release the debt.*

A testator, by his will, provided as follows: " Item five. I give to my said trustees, executor and executrix, full power and authority to sell any or all of my real estate at private or public sale, and invest the proceeds thereof, or to let or lease the same, as they may deem best for the interest of my family." The testator's wife and one Heller were appointed executor and executrix and guardians of the persons and estates of the children. The wife alone qualified. There was no evidence that Heller, who died in 1887, had ever accepted the office of trustee, or performed any act as such.

A mortgage which antedated the will, covering certain property of which the testator died seized, was foreclosed in 1884. The wife was made a party individually and as sole acting executrix, as were also the children and the legatees named in the will of the testator.

An objection was made to the title acquired under this foreclosure, on the ground that Heller was not made a party thereto, and that a valid trust was created by the will in the wife and in Heller, as individuals, apart from the executorial office, and that, consequently, Heller's equity of redemption was not cut off by the foreclosure.

*Held,* that this objection could not be sustained.

That the trust, if any existed, was attached to the executorial office, and, under the circumstances, Heller was not a necessary party to the foreclosure suit.

That, even if a valid trust were created, distinct from the executorial office, and the fee of the real estate were vested in the wife and Heller, as individuals, the title acquired under the foreclosure would not be impaired by reason of the failure to make Heller a party defendant, as by the death of Heller the wife became sole surviving trustee.

That the title was further sustained by the fact that the wife and all the children, being of full age, consented that the surplus money arising upon the foreclosure be paid to the executrix, which was done; after which the children and legatees, who were paid therefrom by the executrix, could not be permitted to question the validity of the foreclosure proceedings.

That the fact that the referee in the foreclosure suit sold more property than it was necessary to sell in order to pay the plaintiff therein the amount due to him did not present an objection to the title, which the purchaser of the property under an executory contract for the purchase thereof could raise.

Appeal by the defendant from a judgment, entered in the office of the clerk of the county of New York on the 27th day of July, 1889,

by which it was adjudged that the plaintiff recover from the defendant the sum of $1,076.14, together with interest, and together with the further sum of $141.29, costs and disbursements.

The action was brought to recover back money advanced under an executory contract for the purchase of land, and the expenses attendant upon the examination of the title thereof, on the ground that the defendant was unable to give a good title thereto.

*Hooper C. Van Vorst,* for the appellant.

*Jacob Steinhardt,* for the respondent.

BARRETT, J.:

We are unable to see what difficulty there was with the defendant's title. The questions which were raised by the plaintiff seem, upon the particular facts of the case, to be purely speculative.

Solomon Freedman died seized of one undivided half of the premises in question, subject to a mortgage. Freedman left a will which attempted to create a trust. His estate, real and personal, was thereby devised and bequeathed to his wife, Rosa, and to his friend Heller, in trust to pay legacies to his children. This was followed by a power in these words:

"*Item* 5. I give to my said trustees, executor and executrix, full power and authority to sell any or all of my real estate at private or public sale, and invest the proceeds thereof, or to let or lease the same as they may deem best for the interest of my family."

His wife and Heller were also appointed executor and executrix and guardians of the persons and estates of the children. The will was proved, but Heller did not qualify. Mrs. Freedman, however, took out letters; this was in 1877. Heller died in 1887, and there was no evidence that he ever accepted the office of trustee, or performed any act as trustee or executor. The mortgage already referred to as antedating the will was foreclosed in 1884. Mrs. Freedman was made a party individually and as sole acting executrix. So were all the children of Solomon Freedman and the legatees under his will. A decree of foreclosure followed in due course, and the defendant's title is derived from the sale under that decree.

The principal objection made to this title is that Heller was not a party to the foreclosure suit. The plaintiff bases this objection

upon the theory that a valid trust was created by Solomon Freedman's will in Mrs. Freedman and Heller, as individuals, apart from the executorial office, and, consequently, that Heller's equity of redemption was not cut off. In our judgment this objection is without merit. It is exceedingly doubtful whether the trust was valid as an express trust to sell, mortgage or lease land for the benefit of legatees. To hold it to be valid by implication, from all the language used in the will, would require the coupling of the power with the language previously employed to create the trust and the treatment of the power as imperative. (*Cooke* v. *Platt*, 98 N. Y., 35.) The power, however, stands by itself, and does not, in terms, apply to the trust purposes. It is also, in a measure, discretionary. The " trustees, executor and executrix," may sell or lease, not as they may find one course or the other most expedient to effect the payment of the legacies, but " as they may deem best *for the interest of my family*," thus covering even the residuary legatee and her interests.

But even if the trust is valid, it is plainly attached to the executorial office and requires the performance of the most ordinary executorial duty. It is true that the devise is nominally to Mrs. Freedman and Heller as individuals, but all the trust duties are imposed upon them as executor and executrix. Indeed, the words trustees and executor and executrix are used throughout in the same sense and as equivalent expressions.

These trust duties consist exclusively of the payment of legacies to the testator's children ; such legacies are to be paid as the children respectively attain their majority, and, in the meantime, the proper sums are to be safely invested on interest by the " executor and executrix, trustees and guardians." In another connection the phrase is used, " shall, by my said executor and executrix, be placed at interest." This is still further emphasized by what the testator styles " Item 4," as follows :

"*Item* 4. In regard to the bequests of five thousand dollars to each of my said sons, as provided in section 2 of this will, I ordain that if, in the opinion of my said *executor and executrix*, the conduct or position in life of my said sons, or either of them, should not be satisfactory, my said *executor and executrix* may, in their discretion,

withhold the payments of such bequest, or any part thereof, until, in the opinion of my said *executor and executrix*, they, my said son or sons, may be worthy of the same, and, if such bequests be withheld, then, and in that case, such beneficiaries shall only receive during my said wife Rosa's lifetime the interest on such bequests."

Then follows "Item 5," already quoted, conferring the power to sell or lease upon his "trustees, executor and executrix." It is thus entirely plain that the trust duty is not only in itself, that is, in its very nature executorial, but is throughout imposed in express terms *upon the executor and executrix as such.* It would be quite absurd, therefore, to imply an intention upon the testator's part to vest the fee in Mrs. Freedman and Mr. Heller as individuals. He could not have intended to so vest the fee upon trusts to be performed, not by the individual devisees, but by the executor and executrix, and with a power of sale granted to them as executor and executrix as well as trustees. That would not only be absurd, but fatal to the plaintiff's contention of a valid express trust. If, then, the trust power was attached to the executorial office, its execution devolved upon Mrs. Freedman, who alone qualified and acted. (*Ogden* v. *Smith*, 2 Paige, 195; *In re Stevenson*, 3 id., 420; *Meakings* v. *Cromwell*, 2 Sandf., 512; *Dominick* v. *Michael*, 4 id., 375; *Conover* v. *Hoffman*, 1 Bosw., 214.) In *Dominick* v. *Michael*, Judge Duer said that "when a power to sell lands, *whether coupled with an estate* or a naked power, is given to several persons as executors, it may, doubtless, be executed under the Revised Statutes by those who take upon themselves the execution of the will, without the concurrence of those who neglect or refuse." (See 2 R. S., 70, §§ 15, 16; Id., 109, § 55; Code Civ. Pro., § 2642; Laws 1883, chap. 401; *Roseboom* v. *Mosher*, 2 Denio, 61; *Sharp* v. *Pratt*, 15 Wend., 610.)

It follows, as a logical sequence, that Heller was not a necessary party to the foreclosure suit, and that the appearance therein, as a defendant, of Mrs. Freedman as sole executrix was sufficient to render the proceedings regular and the decree valid. Indeed, a finding that Heller had actually refused to accept the position of executor or *trustee* would have been justified by his failure to take out letters, and his complete non-action for some seven years after Mrs. Freedman had duly qualified.

But even if the trust was valid and the fee vested in Mrs. Freedman and Heller as individuals, we still think that the defendant's title is not impaired or affected by the failure to make Heller a party defendant in the foreclosure suit. For there is no one who could possibly claim an equity of redemption in the premises or enforce the trust to sell for the benefit of the legatees. Still less is there any one who, in case the trust be deemed invalid, could compel the execution of the trust power. Heller died before the contract between the plaintiff and the defendant was entered into. Thus Mrs. Freedman became sole surviving trustee. She certainly could not as such trustee question the validity of the foreclosure decree nor attempt a sale of the premises in hostility thereto. Her equity of redemption and all her rights, whether as an individual or as executrix, were cut off by the decree. So, too, were any possible rights as trustee, for she was fully apprised by the papers served upon her of the nature and object of the suit ; and the case is thus brought within the distinction suggested in *Landon* v. *Townshend* (112 N. Y., 99).

The children and legatees were in like manner cut off. They were necessary and proper parties (*Buchan* v. *Sumner*, 2 Barb. Ch., 174 ; *McGown* v. *Yerks*, 6 Johns. Ch., 450 ; and see *Wood* v. *Williams*, 4 Mad., 186 ; *Lowe* v. *Morgan*, 1 Bro. Ch. 368) ; and thus they have had their day in court. Neither the children as heirs, nor the children as legatees and *cestui que trust*, nor the widow as individually vested with the remainder, nor the widow as sole executrix, made any objection to the proceedings or decree in the foreclosure suit. Nay, more, there was an express recognition by all these parties, and, as we have seen, they were all of full age, of Mrs. Freedman's right as executrix to the share of the surplus moneys coming to the estate of the testator, Solomon Freedman. For it appears that, upon the consent of these very children, legatees and *cestui que trust*, such surplus moneys were paid to her as such executrix. Now, these moneys in her hands at once became applicable to the payment of the legacies, and it is to be presumed that they were so applied in accordance with the provisions of the will.

It is entirely clear that, after such affirmative acts, the children and legatees could not be permitted to question the validity of the foreclosure proceedings, nor could they require the execution of

the trust or of the power of sale. They elected to accept the fruits of a judgment which purported to cut off all equities of redemption and all right, title and interest which they and all persons claiming under them had in the mortgaged premises. Having done so, they cannot now compel the surviving trustee to execute a trust or power to sell *the same premises for their sole benefit;* nor could such surviving trustee convey any valid title in execution of such trust or power. Neither could the trustee or the *cestui que trust* redeem.

It follows that the failure to make Heller a party defendant, or to name Mrs. Freedman as a trustee (in addition to naming her individually and as sole executrix in the foreclosure proceedings), did not, upon the facts before us, affect the defendant's title or render it doubtful or unmarketable. There is nothing in the point that the referee in the foreclosure suit sold more property than was required to pay the plaintiff. The plaintiff here cannot now question the sale for that reason or because of that fact.

As was said in *McBride* v. *Lewisohn* (17 Hun, 527), "the owner of the equity of redemption was the only person having any right whatever to question it, and by omitting to take any action with regard to the alleged improper sale, and *by permitting the proceedings to go on in reference to the surplus occasioned by the sale,* she has waived all right to any consideration on that subject and is estopped." To the same effect is *Andrews* v. *O'Mahoney* (112 N. Y., 571; and see cases there cited, *Wolcott* v. *Schenck,* 23 How. Pr., 385; *McBride* v. *Lewisohn, supra; De Forest* v. *Farley,* 62 N. Y., 628). The other objections to the foreclosure proceed· ings are trivial. The report of sale was duly confirmed and all parties to the action were thereafter fully bound. (*Bechstein* v. *Schultz,* 45 Hun, 191; *Everson* v. *Johnson,* 22 id., 115.)

It follows that the judgment appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and DANIELS, J., concurred.

Judgment reversed and new trial ordered, with costs to the appellant to abide event.